CITY OF NEW YORK, Appellant, v NEW YORK TELEPHONE COMPANY, Respondent.

PHILIP R. MICHAEL, as Commissioner of the Department of Finance, et al., Appellants, v NEW YORK TELEPHONE COMPANY, Respondent.

First Department, May 23, 1985

**APPEARANCES OF COUNSEL**

*Walter C. Reid* for respondent in both appeals (*John C. Clarke* and *Gerald E. Murray* with him on the brief).

*Philip Agree* of counsel (*Leonard Koerner* and *Michael McLoughlin* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

### OPINION OF THE COURT

MURPHY, P. J.

On September 3, 1959, the City Council enacted Local Law No. 78 of the City of New York which provides:

"Public Telephone Booths. — a. It shall be unlawful to install or maintain a public telephone booth on any street without a license therefor.

"b. Such license may be issued by the commissioner, in his discretion, and * * * shall contain such conditions as are reasonable and proper * * * Each license shall continue in effect until revoked by the commissioner, in his discretion * * *

"d. No fee shall be charged for such a license but the telephone company shall pay to the city its standard public telephone commissions on revenues derived from any public telephone maintained under such a license." (Administrative Code of City of New York § 692f-12.0, as renum.)

These appeals concern the propriety of methods used by defendant New York Telephone Company (Telco) to calculate commissions due to plaintiff City generated by the use of Telco's public pay telephones.

In *City v New York Tel. Co.,* the City seeks moneys allegedly withheld by Telco in computing commissions due the City pursuant to Local Law No. 78. The City argues that Telco has deducted from its commissions electricity costs incurred in illuminating and ventilating its public sidewalk telephone booths. Telco defends such deductions as a reasonable and proper condition of its license and, in effect, an accommodation that saves the City the administrative expense of paying such charges directly. In *Michael v New York Tel. Co.,* the plaintiff reiterates the City's charges of wrongful withholding and unjust enrichment with regard to electricity cost deductions and further alleges that Telco wrongfully failed to include "non-cash" calls (e.g., credit card calls and collect calls) in its calculation of gross receipts upon which the City's commission is based.

When Local Law No. 78 was enacted, the standard commission, as defined by Telco's Service and Rate Guide, was 10% on the first $1 per day, 14% on the next $1 per day, 18% on the next $1 per day, and 20% on receipts over $3 per day. The law's sponsor indicated at the time that the City contemplated receiving $34.60 per month for $200 worth of calls. However, virtually

from the institution of the system, Telco has calculated the City's commission by taking the applicable percentage of cash collected at the public telephone sites and subtracting electricity costs. For the years 1978 through the first six months of 1982, the City seeks repayment of these deductions totaling approximately $3 million.

There is a long and varied history of disagreements between the City and Telco over these arrangements. In 1973, Telco sought payment for electricity charges that it had failed to deduct. In answer, the Director of the Budget informed Telco by letter that "New York City should not be paying for the electricity charges for lighting telephone booths", and that Telco had failed "to compensate the City for revenues which are generated in telephone booths but which are not reflected in the collections". Although the parties negotiated at length concerning these subjects (the Metropolitan Transit Authority had had for a number of years a written agreement with Telco concerning commissions from booths maintained on MTA property which included provisions as to electricity charges), no agreement was reached. In 1976, a contract embodying a new commission schedule was drafted, but not executed. In 1979, the City's Department of Finance protested that there was no written agreement empowering Telco to reduce commissions by deducting electricity charges. The Department notified Telco that it was accepting the October 1979 payment "under protest" and that its protest was applicable "to all future payments and deductions that are made by [Telco]."

In *City v New York Tel. Co.,* Special Term denied the City's motion for partial summary judgment for payment of electricity cost deductions for 1978 and 1979 in the sum of $1,037,846.93, and granted Telco's cross motion to dismiss the complaint. Special Term's determination was primarily based upon the absence of a contract between the parties prohibiting such deductions. We disagree.

The payment of electricity charges by the City is an expenditure of public funds which may only be made with Board of Estimate approval (NY City Charter § 341 *et seq.*). Absent Board of Estimate action, the City cannot be bound to pay the charges. In defense of its procedures, Telco argues that it has always paid the City full standard commissions as required by Local Law No. 78 and that the deduction of electricity costs was a "reasonable and proper" condition of its license. However, insofar as Telco's license, in essence a contract with the City, may arguably have authorized electricity cost deductions, it would be a nullity and

not binding upon the City. "Municipal contracts which violate express statutory provisions are invalid". (*Granada Bldgs. v City of Kingston,* 58 NY2d 705, 708 [citing *Seif v City of Long Beach,* 286 NY 382].) This is so notwithstanding the following language printed on the back of the "sidewalk public telephone booth" licenses issued by the Department of Highways with the concurrence of the various borough presidents at the time: "[Telco] shall pay to the City of New York * * * the standard rates of commissions adopted by the Company from time to time * * * after first deducting from such commissions the cost to [Telco] of the electrical current necessary for the illumination and ventilation of such booths". The officials involved in issuing these licenses could not obligate the City to pay electricity charges in the absence of statutory approval. Unless a municipal contract is made or ratified by a board or officer lawfully empowered to do so by statute, any action by a government official purporting to obligate the municipality is void. (*Albany Supply & Equip. Co. v City of Cohoes,* 25 AD2d 700, *affd* 18 NY2d 968.)

Pertinent to the question of whether the City ever undertook to pay electricity charges is the fact that, at the time of the passage of Local Law No. 78, the City Council did not provide for any deductions from the standard commission. The failure of a legislative body to include a matter within the scope of an act may be construed as an indication that its exclusion was intended. (*Pajak v Pajak,* 56 NY2d 394.) The law itself refers solely to "standard public telephone commissions" and the Service and Rate Guide then in effect calculated such commissions as a percentage of gross daily receipts. Lacking any predicate for the assumption of electricity costs by the City, Telco's deduction of such costs from the City's standard commission payments has been, and continues to be, unlawful.

Telco's contention that the City should be estopped from asserting its claim for past deductions is unpersuasive. As stated by the Court of Appeals in *Seif v City of Long Beach* (*supra,* p 387): "Mere acceptance of benefits by the City under a contract made without authority does not estop a municipal corporation from challenging the validity of the contract and from denying liability for materials furnished or services rendered under a contract not made or ratified by a board or officer acting under authority conferred by law and in the manner prescribed by law * * * Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply

with statutory restrictions and inhibitions can create an obligation or liability of the city." Further, we agree with Special Term's determination that the doctrine of accord and satisfaction is inapplicable to the circumstances at bar. There was no dispute between the parties concerning the City's entitlement to the standard commission as defined in the Rate and Service Guide. The only dispute was the propriety of electricity cost deductions. "[P]ayment of an admitted liability is not a payment of or a consideration for an alleged accord and satisfaction of another independent alleged liability." (*Mance v Hossington,* 205 NY 33, 36.)

■ Telco argues that the three-year period of limitation (CPLR 214 [2]) governs because the claim is for a liability created or imposed by statute (Local Law No. 78). The test is "whether the liability is one which did not exist at common law, or would not exist but for a statute". (*State Farm Mut. Auto. Ins. Co. v Regional Tr. Serv.,* 79 AD2d 858, 859.) The City's claim is in the nature of assumpsit for money had and received, a common-law form of action of equitable derivation. (*See, Lorberblatt v Gerst,* 10 NY2d 244; 7 CJS, Assumpsit, Action of, §§ 1-3.) Hence, the three-year limitation period of CPLR 214 (2) is inapplicable, and the six-year period of CPLR 213 governs.

■ While we hold Telco liable for the electricity costs deducted by it from commissions, we make no finding as to the City's claim for commissions for noncash revenues. The dispute with regard to these revenues does not turn upon the question of whether the City ever assumed responsibility for payment of a debt, but whether the City is entitled to a percentage commission of such revenues by the terms of its agreement with Telco. However, the issues involving noncash revenues were not determined in *City v New York Tel. Co.,* and Special Term's holding in *Michael v New York Tel. Co.* that such claims were barred by res judicata was error.

Accordingly, in *City v New York Tel. Co.* the order of the Supreme Court, New York County (Wright, J.), entered May 16, 1983, which denied plaintiff's motion for partial summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint, should be reversed, on the law, and plaintiff's motion is granted and defendant's cross motion is denied, without costs, and the matter remanded for an assessment.

In *Michael v New York Tel. Co.,* the order of the Supreme Court, New York County (McCooe, J.), entered on or about April 26, 1984, which denied plaintiff's motion for partial summary

judgment and granted defendant's motion for summary judgment dismissing the complaint, should be modified, on the law, and plaintiff's motion for partial summary judgment is granted as to the first, second and fifth causes of action of the complaint, and defendant's motion to dismiss is denied, without costs.

SANDLER, ROSS, CARRO and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on May 16, 1983, unanimously reversed, on the law, and plaintiff's motion for partial summary judgment is granted and defendant's cross motion for summary judgment dismissing the complaint is denied, without costs and without disbursements, and the matter is remanded for an assessment.

Order, Supreme Court, New York County, entered on or about April 26, 1984, unanimously modified, on the law, and plaintiffs' motion for partial summary judgment is granted as to the first, second and fifth causes of action of the complaint, and defendant's cross motion to dismiss is denied, without costs and without disbursements.