■ GRONICH & COMPANY, INC., Formerly Known as GRONICH & KARR, INC., Respondent-Appellant, v 649 BROADWAY EQUITIES Co. et al., Appellants-Respondents.—Judgment of the Supreme Court, New York County (Andrew V. Siracuse, J.), entered November 3, 1989, which, following a nonjury trial, *inter alia,* awarded plaintiff recovery against defendant Circuit City Stores, Inc. (formerly known as and sued herein as Wards Company, Inc.) in the sum of $70,312.50 plus interest, together with costs and disbursements, and further awarded Circuit City Stores, Inc. recovery over against defendants 649 Broadway Equities Co. *et al.* in the sum of $70,312.50 plus interest and an additional sum of $129,957.44 with interest, together with costs and disbursements, unanimously modified on the law and the facts to the extent of awarding judgment in favor of plaintiff against defendant 649 Broadway Equities Co. *et al.* in the sum of $70,312.50, plus interest, costs and disbursements, jointly and severally, and otherwise affirmed, without costs.

Appeal from order of the Supreme Court, New York County (Kenneth Shorter, J.), dated August 22, 1989, is dismissed as moot, without costs.

In this action plaintiff Gronich & Company, Inc. (Gronich) seeks recovery of a broker's commission from the defendants, the owner and lessee, respectively, of commercial property located at 700 Broadway, New York County. Defendant 649 Broadway Equities Co. (Equities) is the owner of the property and defendants Becker & Becker and Martin R. Fine (Fine) are general partners in Equities (collectively referred to as the Equities defendants). Defendant Circuit City Stores, Inc., formerly known and sued as Wards Company, Inc. (Wards), the

lessee, is the successor in interest to Lafayette Radio Electronics Company.

The amended complaint, dated June 4, 1984, alleged causes of action in quantum meruit, conversion and fraud. Circuit City cross-claimed against the Equities defendants under a clause in the lease which provided that the "[l]andlord will indemnify [t]enant against any claims, damages or liabilities (including reasonable attorneys' fees), if any, for such brokerage fees or commissions [to Gronich & Karr, Inc.], if any."

By order entered July 5, 1985, the Supreme Court (Eugene Wolin, J.) granted, on default, Circuit City's motion for summary judgment as to liability on its cross claim against Equities. On August 22, 1989, the Supreme Court (Kenneth Shorter, J.) denied Circuit City's motion, pursuant to CPLR 6201 (3), for an order attaching Equities' assets as security for any potential judgment. From this order Circuit City appeals.

Thereafter, following a nonjury trial, judgment was entered in favor of plaintiff and against Circuit City, with judgment over in favor of Circuit City against the Equities defendants and further awarding Circuit City attorneys' fees and costs against the Equities defendants. Both groups of defendants appeal from this judgment and plaintiff cross-appeals.

It was essentially undisputed at the trial that Jules Klapper, a real estate broker employed by plaintiff, alerted Wards to the availability of the space at 700 Broadway, brought Wards and the Equities defendants together, was active in negotiating essential lease terms, and was, in essence, a catalyst for the resulting lease. A letter of November 7, 1983, signed by Wards' treasurer, authorized plaintiff to negotiate procurement of the lease as Wards' sole and exclusive agent. A letter of that same date from Klapper to Fine sets forth an offer on behalf of Wards and advises Fine of the method for calculating Klapper's commissions.

When Fine revealed to Klapper that he would not pay the fee, Klapper looked to Wards. However, Wards' representative advised Klapper that Wards would only pay the commission if it could obtain a rebate in the form of rent credits. While the parties discussed the possibility of Wards and Equities each paying one third of the commission and of plaintiff foregoing the remaining one third, no agreement was reached. Thus, the evidence was insufficient to establish a meeting of the minds between Klapper and either group of defendants with respect to payment of the brokerage commission. The only evidence in support of such an agreement with Wards was the testimony

of Klapper that after Fine indicated that he would not pay the commission, a Wards' representative offered to pay a reduced commission of $44,000 and Klapper accepted this offer. Wards' representative denied making such an offer and further testified that Klapper recommended the indemnity agreement in the lease in order to protect Wards since Klapper had not reached a formal brokerage agreement with Fine.

Nonetheless, it cannot be assumed that a broker works gratuitously and the lessor and lessee are held to such knowledge when they accept the result of the broker's services. *(Colvin v Post Mtge. & Land Co.,* 225 NY 510 [1919], *mot to amend remittitur denied* 226 NY 585 [1919].) By its letter of November 1983 plaintiff became Wards' exclusive agent. *(See, Shapiro v Greenwich Sav. Bank,* 266 App Div 359 [1st Dept 1943], *affd* 293 NY 724 [1944]; *Long Is. Business Exch. v De Luca,* 58 AD2d 594 [2d Dept 1977].)* Fine, too, is liable to plaintiff for accepting and benefiting from Klapper's services. *(Adams & Co. Real Estate v E. & B. Super Mkts.,* 26 AD2d 365, 366 [1st Dept 1966].)* This theory of a broker's "implied" employment was recognized by the Court of Appeals as early as 1881, when in *Sibbald v Bethlehem Iron Co.* (83 NY 378, 380-381) it stated: "the contract of employment may be established * * * by facts showing, in the absence of [an] express agreement, a conscious appropriation of the labors of the broker * * * in some cases 'by the mere acceptance of the labors of a broker.' "

The inclusion of a provision in the lease by which Wards acknowledged that plaintiff was its exclusive broker and by which both Wards and Fine acknowledged the likelihood of an earned commission confirms that Wards and Fine knew that Klapper expected to be compensated for his services. *(Cf., Cohon & Co. v Russell,* 23 NY2d 569, 573, 575-576 [1969].)* When the seller has accepted the buyer brought to him by a broker, and when the seller and buyer have agreed upon terms and execute a lease agreement, the broker's work is done and he has earned a commission. *(Colvin v Post Mtge. & Land Co.,* 225 NY, *supra,* at 514, 516.)

Although the trial court properly awarded plaintiff recovery against defendant Circuit Stores, it is clear from the foregoing that the liability of defendants 649 Broadway Equities Co. *et al.* was also established. We, therefore, modify to the extent of finding liability against said defendants.

We have reviewed the remaining contentions of the parties and find them to be without merit. Concur—Kupferman, J. P., Sullivan, Carro, Milonas and Smith, JJ.