[628 NYS2d 628]

CURTIS PROPERTIES CORPORATION, Appellant, v GREIF COMPA-
NIES et al., Respondents.

First Department, June 13, 1995

APPEARANCES OF COUNSEL

*Kenneth R. Fields,* New York City, for appellant.

*John H. Wilkinson* of counsel, New York City *(Donovan Leisure Newton & Irvine,* attorneys), for Greif Companies, respondents.

*M. William Scherer* of counsel, New York City *(Carb, Luria, Glassner, Cook & Kufeld,* attorneys), for Joseph & Feiss and another, respondents.

## OPINION OF THE COURT

RUBIN, J.

In this matter, the Court is asked to enforce against defendants, tenants of premises owned by Olympia & York, a brokerage agreement providing that plaintiff will seek compensation only from defendants' landlord, which is not a party to this litigation. The contract drafted by plaintiff includes no remedy in the event of defendants' breach and fails to specify whether an exclusive agency or the exclusive right to deal with potential lessors is granted to the broker. Plaintiff appeals from an order which granted defendants' motion for summary judgment dismissing the complaint against them and which denied plaintiff's cross motion for partial summary judgment on the issue of liability and from the judgment entered thereon. Despite the shortcomings in the terms of the contract, this Court defers to fundamental principles of contract law to hold that the broker is entitled to maintain this action.

Defendants are apparel companies with showrooms and offices located at 1290 Avenue of the Americas, a location notable for housing the operations of "almost the entire industry comprising the men's tailored clothing business", as

plaintiff notes in its brief. The alleged purpose of the brokerage agreement between the parties was the negotiation of favorable lease renewals for each defendant with Olympia & York. The brokerage agreement provides, in material part: "This letter confirms your granting to us the exclusive right to find, negotiate for and secure space or property to be occupied or used by you, your affiliate, subsidiary or designee. Of course, all terms and conditions of any proposed lease will be subject to your approval and will in no event be binding upon you until executed. In return for you giving us this exclusive right, we will thoroughly analyze your space requirements and assist you in choosing a new location for your corporate offices at 1290 Avenue of the Americas. We will negotiate on your behalf with landlords and owners of property, including the owners of 1290 Avenue of the Americas, for such spaces of buildings as you may desire to lease or purchase and will analyze each transaction from a practical and financial standpoint. Our sole compensation shall be that paid by the seller or leasor [sic] on the consummation of a transaction." The duration of the agreement extended to December 31, 1987, with a continuance "in the event that as of the aforesaid date negotiations are pending for new space for your company."

Plaintiff served separate complaints against the three defendants, which are identical in all relevant aspects, and the actions were subsequently consolidated. The complaints state that defendants' present leases with Olympia & York were to expire on April 30, 1990. Plaintiff found an acceptable alternative location and, on November 23, 1987, the respective defendants executed letters of intent to lease space in premises located at 1500 Broadway. "In order to force the LANDLORD to reduce its terms" plaintiff then "gave copies of said letter of intent to certain other individuals with the knowledge that those individuals would exhibit said letter of intent to the LANDLORD." In December of 1987, however, defendants commenced their own lease negotiations with Olympia & York, culminating in leases on terms comparable to those set forth in the letter of intent circulated by plaintiff. The complaints charge that defendants prevented plaintiff from becoming the procuring cause of renewal leases for defendants' current space, thereby depriving it of a commission.

In its first cause of action, plaintiff seeks damages for breach of the brokerage agreement in the total amount of $402,000 ($172,000 from defendant Greif Companies, $130,000 from defendant Joseph & Feiss Company, and $100,000 from

defendant Pincus Brothers-Maxwell). The second cause of action seeks recovery in quantum meruit for the same amounts, based upon the reasonable value of plaintiff's services in locating and analyzing other space and in negotiating with Olympia & York for renewal leases.

Side agreements were executed contemporaneously with the basic brokerage agreement, stating the terms of Olympia & York's initial renewal offer ($40 per square foot for first five years, $45 for next five years, plus $10 per square foot allowance for renovations) and waiving any commission from Olympia & York should plaintiff fail to secure leases on better terms than originally proposed. The pertinent language states, "In the event that we are unsuccessful in negotiating a transaction in some other building satisfactory to you in all respects, or a transaction at 1290 Avenue of the Americas, more favorable to you than the one described above, we agree that, at your election, we shall have no right to represent you with the owners of 1290 Avenue of the Americas, notwithstanding that negotiations may be continuing from prior to December 31, 1987." These side agreements provide that defendants' sole obligation with respect to this waiver of commission is not to disclose to Olympia & York the existence of the letter of intent for space at 1500 Broadway, "so as not to prejudice any pending negotiations."

In their joint answer, defendants do not deny plaintiff's efforts on their behalf. The gravamen of their defense is that, as a matter of law, they are under no obligation to compensate plaintiff. Defendants rely on the express terms of their agreement, which provides that plaintiff's "sole compensation shall be that paid by the seller or leasor [sic]". Defendants' answer further maintains that negotiations for renewal leases were initiated by Olympia & York, that defendants renewed their leases after the brokerage agreements had expired, and that plaintiff was not the procuring cause of the renewal leases ultimately obtained from Olympia & York.

Upon defendants' joint motion to dismiss the complaints, the parties raise several other material issues of fact. They dispute whether plaintiff advised Olympia & York of its representation of defendants in negotiations for renewal of their leases at 1290 Avenue of the Americas and, if so, whether Olympia & York maintained a policy of refusing to deal with a broker in negotiating renewal leases with its tenants. Defendants question the viability of the alternative space located by plaintiff. Finally, defendants assert that they

were compelled to deal directly with the landlord out of necessity because their leases imposed steep penalties for holding over after the expiration of their tenancies.

In granting defendants' motion, Supreme Court determined that Olympia & York had "absolutely refused" to negotiate with plaintiff. The court noted that the letter agreement contains no language expressly prohibiting the principals from dealing directly with the landlord and imposes no contractual liability upon defendants for the broker's commission.

Factual disputes are not amenable to resolution on a motion for summary judgment dismissing the complaint (*Harris v City of New York,* 147 AD2d 186, 191; *see also, IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.,* 152 AD2d 451). The credibility of the parties is not an appropriate consideration for the court (*Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338), and statements made in opposition to the motion must be accepted as true (*Patrolmen's Benevolent Assn. v City of New York,* 27 NY2d 410, 415; *Cohn v Lionel Corp.,* 21 NY2d 559). However, this matter presents questions of law regarding the interpretation and even application of the brokerage agreement. On this appeal, plaintiff contends that it entered into an exclusive dealing contract, entitling it to payment of a fee upon the signing of a renewal lease, even if that lease was procured entirely through the efforts of one of its principals. Defendants insist that, in the absence of express language to the contrary, the brokerage agreement grants plaintiff only an exclusive agency, reserving the principals' right to deal directly with their landlord.

Irrespective of how the relationship of the parties might be characterized in the brokerage agreement, under the peculiar circumstances of this case, it is clear that plaintiff entered into a contract with defendants under which its right to represent them could not be abrogated unilaterally by defendants. The relationship between plaintiff and defendants is unlike the normal relationship of broker and client (*Sibbald v Bethlehem Iron Co.,* 83 NY 378, 380-381) in which the client implicitly promises to pay the broker's commission if he is successful in finding a party (normally a buyer) who is willing to deal on the terms stated by his client (normally the seller). Therefore, in the usual case, the consideration for the broker's efforts on behalf of his client is the client's implied promise to pay the broker a commission.

The case under review is unusual because the parties'

written agreement provides that plaintiff broker will look only to the seller or lessor of property ultimately obtained for defendants' use in their apparel business. By the express terms of the brokerage agreement, the consideration for plaintiff's services is not defendants' implicit promise to pay but the right to receive a fee to be paid by the ultimate lessor, Olympia & York *(Lansco Corp. v World Zionist Org. Am. Section,* 198 AD2d 176, 177). Moreover, payment of that fee is clearly conditioned on plaintiff's "right to represent [defendants] with the owners of 1290 Avenue of the Americas", as the contemporaneous side agreements provide.

In essence, a contract is a promise supported by consideration and, in the case of a bilateral contract such as this, the promise of each party must be based upon valuable consideration (Calamari and Perillo, Contracts § 70, at 134). Plaintiff cannot be regarded as having bargained for the privilege of rendering its services to defendants without also imposing some reciprocal obligation upon them. It would be merely gratuitous and contrary to the commercial relationship of a broker and his principal to assume that plaintiff undertook a duty to locate space without any prospect of compensation *(Gronich & Co. v 649 Broadway Equities Co.,* 169 AD2d 600, 602 ["it cannot be presumed that a broker works gratuitously"]). The benefit for which plaintiff bargained, as expressed in the written agreements, was the compensation to be received from the owner or lessor (presumably Olympia & York) of the premises it located for defendants. Furthermore, the side agreements expressly condition defendants' election to forego plaintiff's representation of their interests upon the broker's failure to negotiate renewal leases on more favorable terms than Olympia & York originally extended.

As a matter of law, having entered into an agreement under which the broker's compensation is conditioned on its right to represent defendants' interests with a third party, defendants are precluded from taking any action which would defeat that condition. As this Court recently noted in *Rachmani Corp. v 9 E. 96th St. Apt. Corp.* (211 AD2d 262): "It is well settled that 'conditions in contracts for compensation of brokers have been enforced in accordance with the letter of the promise to pay' *(Mascioni v I. B. Miller, Inc.,* 261 NY 1, 5). However, it is equally settled that 'a party may not frustrate the performance of an agreement by bringing about the failure of a condition precedent' *(Creighton v Milbauer,* 191 AD2d 162, 165, citing *Lindenbaum v Royco Prop. Corp.,* 165 AD2d 254,

260). The party seeking to enforce a contractual obligation generally bears the burden of proof with respect to a condition precedent. ' "The party burdened by the duty, however, usually has the burden of proving the discharge of his duty by the occurrence of a condition subsequent" ' *(Lindenbaum v Royco Prop. Corp., supra,* at 258, quoting Calamari and Perillo, Contracts § 140, at 228)."

This Court is unable to conclude, as defendants contend, that they retained the right to deal directly with Olympia & York. Under circumstances in which the exercise of this right defeats any chance for plaintiff to receive payment from defendants' lessor, its retention cannot be said to have been within the contemplation of the parties at the time they executed the brokerage agreement and related side agreements. The circumstances under which defendants can elect to discharge plaintiff as their agent are expressly set forth in the side agreements. Moreover, defendants bear the burden of proof with respect to the propriety of their election to deal directly with Olympia & York, as it operates to relieve them from their only obligation under the brokerage agreement. The termination of plaintiff's right to represent defendants obviates the condition precedent to plaintiff's compensation, preventing it from being the procuring cause of the transaction for renewal leases, and offends the principal that a party to a contract may not frustrate its performance by bringing about the failure of a condition precedent *(Creighton v Milbauer, supra,* at 165). In this event, the law permits recovery on the theory of implied contract *(Knobel v Manuche,* 146 AD2d 528, 530, citing *Carvatt v Lippner,* 82 AD2d 818).

Another fundamental premise of contract law militates against adopting the interpretation of the agreement proposed by defendants. Under the facts of record, the grant of an exclusive agency by defendants (as opposed to a more extensive right to deal on their behalf) bestows no benefit on plaintiff. A promise to refrain from dealing directly with their landlord, so long as they do not feel so disposed, is an illusory promise obliging defendants to nothing *(Strong v Sheffield,* 144 NY 392 [promise to forbear from demanding payment of antecedent debt for unspecified period is illusory]). Because the promises of both parties to a bilateral contract must be supported by consideration, the contract is unenforceable if the promise of either party is illusory (Calamari and Perillo, Contracts § 70, at 134).

The courts avoid an interpretation that renders a contract

illusory and therefore unenforceable for lack of mutual obligation *(Dorman v Cohen,* 66 AD2d 411, 415) and prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound *(Wood v Duff-Gordon,* 222 NY 88). The record in this case demonstrates that the parties intended to enter into a valid contract, as evinced by the signed brokerage agreement *(Four Seasons Hotels v Vinnik,* 127 AD2d 310, 317). Defendants do not contend that no benefit has been conferred by virtue of plaintiff's efforts on their behalf. It is not disputed that the strategy of obtaining a letter of intent from the prospective lessor of alternative space proved successful in extracting concessions from Olympia & York (regardless of whether the alternative space was suitable for defendants' needs or not). Nor is it illogical to suggest that even Olympia & York, by retaining all the major men's apparel vendors as its tenants, received a benefit from plaintiff's services.

If this Court were to accept defendants' contention that the agreement with plaintiff conferred only an exclusive agency and find the agreement void for lack of mutual obligation, the outcome would be no different. In the absence of a contract, express or implied, a broker is entitled to receive a commission in a reasonable amount for bringing together the parties to a transaction *(Sibbald v Bethlehem Iron Co., supra,* at 380-381 [contract established by facts showing conscious appropriation of broker's labor]). As this Court stated in *Gronich & Co. v 649 Broadway Equities Co.* (169 AD2d, *supra,* at 602), "When the seller has accepted the buyer brought to him by a broker, and when the seller and buyer have agreed upon terms and execute a lease agreement, the broker's work is done and he has earned a commission" (citing *Colvin v Post Mtge. & Land Co.,* 225 NY 510, 514, 516).

Having availed themselves of the benefits of their bargain with plaintiff, defendants may not evade the obligation to pay compensation for services rendered by the broker *(Bradkin v Leverton,* 26 NY2d 192, 197). Equity requires that plaintiff recover for its services in quantum meruit in order to avoid the unjust enrichment of defendants at its expense *(supra; Waldman v Englishtown Sportswear,* 92 AD2d 833, 836). On the facts of record, it appears that plaintiff would be able to establish " '(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and

(4) the reasonable value of the services' " *(Bauman Assocs. v H & M Intl. Transp.,* 171 AD2d 479, 484).

Finally, the finding that the agreement between the parties constitutes more than the grant of an exclusive agency does not dictate the conclusion that defendants are liable for payment of plaintiff's commission. The writings do not, as Supreme Court noted, go so far as to declare that the contract gives plaintiff an exclusive right to deal on defendants' behalf and, in the absence of unequivocal language, this Court declines to infer the grant of so extensive a right *(see, Solid Waste Inst. v Sanitary Disposal,* 120 AD2d 915, 916-917). Furthermore, the construction of the brokerage agreement as an exclusive right to deal contract is inconsistent with its representation that the broker will not look to defendants for payment of its commission *(supra; Interactive Props. v Doyle Dane Bernbach,* 125 AD2d 265, 273, *lv denied* 70 NY2d 613). Any ambiguity with respect to plaintiff's rights under the agreement must be resolved against plaintiff as the broker who drafted it *(Graff v Billet,* 101 AD2d 355, 356 [citing *Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342], *affd* 64 NY2d 899).

Defendants have raised triable issues of fact. Among other contentions, they argue that Olympia & York refused to deal with plaintiff, making their direct participation in the negotiations imperative. Nothing in the agreement with defendants suggests that they had any control over, or responsibility for, any actions of their landlord during the course of negotiations *(see, Millicom Inc. v Breed, Abbott & Morgan,* 160 AD2d 496, 497-498, *lv denied* 76 NY2d 703). By entering into the contract with defendants (rather than with the party from whom it expected payment), plaintiff clearly assumed the risk that defendants' lessor would refuse to negotiate with anyone except the principals to the transaction. At his deposition, Mark Weiss, a leasing executive for Olympia & York, testified, "We told the defendants our position is we don't want to deal with the guy [Tom Curtis of Curtis Properties] if we have to pay him. We knew these guys [defendants] weren't going to pay him." However, the witness also stated that defendants "thought they knew everything. That's why they got bad deals. We knew they were going to screw their broker." Be that as it may, defendants should be afforded the opportunity to prove that the breakdown in negotiations was due to the intransigence of the landlord and that plaintiff's performance

of its duties otherwise failed to meet all of the requirements specified in the agreement.

Accordingly, the judgment of the Supreme Court, New York County (Herman Cahn, J.), entered March 25, 1994, which granted defendants' motion for summary judgment dismissing the complaint and denied plaintiff's cross motion for partial summary judgment with respect to liability on its first cause of action, should be modified, on the law, defendants' motion for summary judgment denied and the complaint reinstated and, except as so modified, affirmed, without costs. The appeal from the order of the same court and Justice, entered February 16, 1994, should be dismissed as superseded by the judgment entered thereon, without costs.

Motion seeking leave to file an *amicus curiae* brief is denied.

MURPHY, P. J., ROSENBERGER, TOM and MAZZARELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered March 25, 1994, modified, on the law, defendants' motion for summary judgment denied and the complaint reinstated and, except as so modified, affirmed, without costs. The appeal from the order of the same court and Justice, entered February 16, 1994, dismissed as superseded by the judgment entered thereon, without costs. Motion seeking leave to file an *amicus curiae* brief is denied.