■ DEPARTMENT OF FINANCE OF THE CITY OF NEW YORK et al., Respondents, v NEW YORK TELEPHONE COMPANY, Appellant. (Action No. 1.) PHILIP R. MICHAEL, as Finance Commissioner of the City of New York, et al., Respondents, v NEW YORK TELEPHONE COMPANY, Appellant. (Action No. 2.) [692 NYS2d 34] —Order, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered October 7, 1998, which denied defendant New York Telephone Company's motion for summary judgment dismissing the complaints, and which granted plaintiffs' cross motions for partial summary judgment on the issue of liability on their first and third causes of action in the respective complaints, unanimously reversed, on the law, without costs, the motion granted, the cross motions denied, and the complaints dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaints.

Pursuant to a statute enacted by the City Council on September 3, 1959 as Local Laws, 1959, No. 78 of the City of New York, a license is required to install and maintain a public telephone booth in the City of New York. As originally provided in section 82d7-15.2 (b) of the Administrative Code of City of New York, the license was to remain "in effect until revoked by the president of the borough in which such booth is located, in his discretion." The provision was subsequently amended to substitute the Commissioner of Transportation as

the licensing official (Administrative Code of City of New York § 692f-12.0, as amended and renum by L 1963, ch 100, § 96; recodified as Administrative Code § 19-131 by L 1985, ch 907, § 1; amended and renum § 19-128 by Local Laws, 1993, No. 104 of City of NY § 1; repealed by Local Laws, 1995, No. 68 of City of NY § 1). However, the disputed provision of this section has remained unchanged throughout the various statutory amendments and renumberings, until its repeal in 1995. It states: "d. No fee shall be charged for such a license but the telephone company shall pay to the city its standard public telephone commissions on revenues derived from any public telephone maintained under such a license." Reflecting the statutory language, licenses issued until 1976 included the provision: "The New York Telephone Company shall pay to The City of New York, in accordance with the regulations and the standard rates of commission adopted by the Company from time to time, commissions on charges collected for public telephone service at the booths * * * after first deducting * * * the cost to the Company of the electrical current necessary for the illumination and ventilation of such booths."

On a prior appeal, this Court struck down the deduction for electricity as imposing a financial obligation upon the City without the requisite statutory approval (*City of New York v New York Tel. Co.,* 108 AD2d 372, 375, *appeal dismissed* 65 NY2d 1052, 1053). We expressly declined to rule on the question raised by the City, whether defendant is obligated to pay commissions from its operation of telephone booths on any revenues except those represented by coin deposits (e.g., collect calls). On this appeal, the City further maintains that the commission rate should be fixed at the rate in effect when the statute was enacted in 1959.

We find no support for either proposition. Had the City Council intended to fix the rate of commission, it would have been a simple matter to incorporate statutory language setting the rate at "the commission in effect on September 3, 1959." As the Court of Appeals stated in *People v Finnegan* (85 NY2d 53, 58), "We have firmly held that the failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended". The construction urged by the City is inconsistent with the statutory provision for payment by defendant of "its standard public telephone commissions" and by the inclusion of the provision for "the standard rates of commission adopted by the Company from time to time" in the actual licenses until 1976. Therefore, even if we were to regard the statute as less than a complete

and certain expression of legislative intent, it is evident that in the course of its licensing activities the City regarded the statute as providing for a variable commission schedule. As the Court of Appeals has stated, "The practical construction put upon a constitutional provision, as well as upon a statute, by the Legislature or by departments of State government, is entitled to great weight, if not controlling influence, when such practical construction has continued in operation over a long period of time" (*Matter of Kolb v Holling*, 285 NY 104, 112). The City's application of the statute to its licenses with defendant is consistent with the plain meaning of the legislation (*cf.*, *Anderson v Regan*, 53 NY2d 356, 362) and has continued for over 15 years. We therefore regard the City's construction of the statute during this period as a "controlling influence" on its proper interpretation.

As to the payment of commissions on calls for which no cash deposit is required, defendant asserts, and the City does not dispute, that until 1982 it was technically impossible to determine what revenue was derived from a particular telephone except by counting the coins collected from the cash box. Logically, the extent of the obligation intended to be imposed under what is essentially a contract between the City and defendant (108 AD2d 372, 374, *supra*) is limited to those matters reasonably within the contemplation of the City Council at the time it enacted the governing legislation (*see*, *Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 265). Furthermore, a statute must be interpreted in the context of conditions at the time of its enactment and "construed as the courts would have construed it if it had come in question soon after its passage" (*People v Broadway Ry. Co.*, 126 NY 29, 37; McKinney's Cons Laws of NY, Book 1, Statutes § 93). That literal interpretation of the term "revenue" supports the City's position is not dispositive of the statute's construction. "Literal interpretation of the words used will not be accorded when to do so will occasion great inconvenience, or produce inequality, injustice or absurdity" (*Zappone v Home Ins. Co.*, 55 NY2d 131, 137).

The City is not, as it argues, at the mercy of defendant's "unfettered discretion and authority to alter both the rates of commissions and the base upon which they would be paid." The City has issued defendant a license which, both as a general principle and by express statutory provision, is revocable at will. The municipality, therefore, is not obliged to accept whatever commission defendant chooses to pay, however paltry, but retains substantial power to negotiate a better com-

mission schedule. The City's failure to act merely reflects its acquiescence in the status quo. Finally, the City has the significant advantage over most contracting parties of being able to resort to the enactment of legislation to provide for a more favorable rate of return for the grant of a license to install telephones on City property (Administrative Code § 23-406). Concur—Sullivan, J. P., Williams, Mazzarelli, Wallach and Rubin, JJ.