[762 NYS2d 373]

JOSEPH P. DAY REALTY CORP., Appellant, v CHARLES CHERA et al., Respondents.

First Department, July 10, 2003

APPEARANCES OF COUNSEL

*Amos Weinberg*, Great Neck, for appellant.
*Lawrence G. Soicher,* New York City, for respondents.

## OPINION OF THE COURT

GONZALEZ, J.

A real estate broker who acts as the procuring cause on a commercial lease, and whose labors and expectation of compensation are expressly acknowledged by the parties to the lease, may recover its commission from either the lessor or lessee under the theory of implied contract of employment. The precise issue we must decide is whether the lessor in this case was entitled to summary judgment dismissal of the broker's complaint on the ground that no implied contract existed as a matter of law. As we conclude that the lessor failed to meet its burden in this respect, we modify to reinstate the broker's complaint.

Plaintiff Joseph P. Day Realty Corp. (plaintiff), a licensed real estate broker, commenced the instant action against defendants Charles and Steven Chera, and S.C.C. 181st Street L.L.C. (defendants), to recover a brokerage commission in connection with a lease executed between defendants as lessor and nonparty Beth Israel Medical Center (BI) as lessee. Significantly, plaintiff does not allege in its complaint that it had an express agreement with defendants to perform brokerage services for them. Instead, plaintiff alleges that defendants "requested of plaintiff to communicate with [BI] towards consummation of the lease" and that they "consented to plaintiff's efforts to secure a lease agreement with [BI]." Plaintiff's complaint further alleged that it introduced BI and defendants; that it "participated in all the critical negotiations towards the * * * lease"; that it procured BI as a tenant for defendants; that defendants agreed on how plaintiff's commission would be calculated; and that plaintiff has demanded its commission and defendants have refused to pay.

Plaintiff moved for summary judgment, arguing that it was entitled to judgment as a matter of law as a third-party beneficiary of article 69 of the lease agreement between defendants and BI. Article 69, titled "BROKER," reads as follows:

> "Tenant covenants, warrants and represents that Tenant did not engage or otherwise obtain the benefit of the services of any broker or finder instru-

mental in consummating this Lease except Joseph P. Day Realty Corp. (the 'Broker') and that no conversations or negotiations were had by Tenant with any broker or finders except Joseph P. Day Realty Corp. concerning the renting of the Premises. Tenant agrees to hold Landlord harmless against any claims for a brokerage commission or consultation fees arising out of any conversations or negotiations had by Tenant with any broker or finders except Joseph P. Day Realty Corp. Landlord agrees to hold Tenant harmless against any claims for a brokerage commission or consultation fees arising out of any conversations or negotiations had by Landlord with any broker or finders with respect to this Lease and the renting of the Premises to Tenant, including Joseph P. Day Realty Corp."

The record shows that in a January 15, 1999 letter to defendants, plaintiff's vice-president stated that he had been "authorized to submit an offer to you on behalf of Beth Israel Medical Center" for a term of 10 years, with a five-year option, with rent beginning at $200,000 per year and escalating at 3% per annum. The letter also stated: "This offer is subject to Joseph P. Day Realty Corp. receiving one full commission consisting of six (6%) of the first year's rent, five (5%) percent of the second year's rent and three (3%) of each subsequent year['s] rent." Plaintiff submitted an additional letter written to defendants' attorney, dated February 8, 1999, setting forth "the basic terms of the lease between Charles Chera and Beth Israel Medical Center"—a 15-year term, rent beginning at $200,000 per year with 2% escalations—terms which were ultimately adopted into the final lease. This February 8 letter also included plaintiff's statement that BI's offer was "subject to" plaintiff receiving its full commission.

Plaintiff's vice-president, Robert Oliver, also submitted an affidavit in which he averred that he arranged a conference call in September 1998 with defendants and their attorney and told them of BI's interest in leasing space in their building; that defendant Charles Chera discussed with Oliver the rent he was looking for and approved his proceeding with BI as a prospective tenant; that Oliver showed the premises to several BI representatives; that he showed Chera other buildings to measure their value against his building; that he participated in negotiations with the parties on a weekly basis, culminating

in the February 8, 1999 offer letter; and that in June 1999, he attended a meeting between defendants, their attorney and the BI representatives in which all disputes over the lease terms were resolved.

Defendants opposed the motion and also cross-moved for summary judgment. Defendants argued that there was never any brokerage agreement obligating them to pay plaintiff's commission; that plaintiff was at all times representing BI, not them; that plaintiff was not the procuring cause of the lease; that the lease deviated materially from the offer conveyed in plaintiff's February 8, 1999 letter; and that plaintiff was not entitled to a commission since BI eventually defaulted on the lease. In addition, defendants argued that plaintiff's summary judgment motion should be denied on the ground that it had repeatedly failed to provide discovery or appear for depositions.

In an oral decision dictated into the record, the IAS court denied plaintiff's motion and granted defendants' cross motion for summary judgment dismissing the complaint. The court found that plaintiff had failed to adduce any evidence showing an oral or written agreement obligating defendants to pay plaintiff a brokerage commission. The court rejected plaintiff's argument that article 69 of the lease demonstrated such an obligation, finding instead that it merely constituted an indemnity agreement protecting both parties from claims of other brokers. Lastly, the court found no evidence that plaintiff negotiated the materials terms of the lease.

On appeal, plaintiff argues that summary judgment should not have been awarded to defendants since they acknowledged in the lease that plaintiff was acting as broker and they accepted the benefits of plaintiff's services in procuring a lessee for their premises. Based on these facts, plaintiff claims that it is entitled to a commission from defendants under a theory of implied contract, or as a third-party beneficiary of article 69 of the lease between defendants and BI. As we conclude that defendants have failed to demonstrate as a matter of law that no implied contract arose from their acceptance of the benefits of plaintiff's services, we modify to deny defendants' cross motion and reinstate the complaint.

In order for a broker to be entitled to a commission for services rendered, the broker must plead and prove a contract of employment, either express or implied, with the defendant (*see Greene v Hellman*, 51 NY2d 197, 205-206 [1980]; *Sibbald v Bethlehem Iron Co.*, 83 NY 378, 380 [1881]). As the Court of Appeals stated in *Sibbald* (83 NY at 380): "[T]he contract of

employment may be established either by proof of an express and original agreement that the services should be rendered, or by facts showing, in the absence of such express agreement, a conscious appropriation of the labors of the broker." Indeed, "the contract may be established in some cases 'by the mere acceptance of the labors of a broker' " (*id.*).

The IAS court correctly concluded that plaintiff failed to provide any evidence of an express agreement by defendants obligating them to pay plaintiff's brokerage commission. Tellingly, plaintiff's own complaint is couched in terms indicating that defendants merely acquiesced in accepting plaintiff's services (defendants "consented to plaintiff's efforts to secure a lease agreement"), rather than demonstrating that they actually agreed to pay for such services. Moreover, plaintiff does not point to a single writing signed or authored by defendants evidencing its contention that defendants agreed to pay their commission.

We also agree with the IAS court's conclusion that plaintiff has failed to establish as a matter of law that it was an intended third-party beneficiary of article 69 of the lease executed by defendants and BI. Where a contract of sale or lease agreement admits the broker's performance of services and includes an express promise by the seller to pay the broker's commission, the broker is entitled to summary judgment on its claim for a commission as a third-party beneficiary of the contract or lease (*see Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 67 [1999]; *Ambrose Mar-Elia Co. v Dinstein*, 151 AD2d 416, 418 [1989], *lv denied* 74 NY2d 615 [1989]; *William B. May Co. v Monaco Assoc.*, 80 AD2d 798, 799 [1981]; *Ficor, Inc. v National Kinney Corp.*, 67 AD2d 659, 659-660 [1979]).

Although the language in article 69 of the instant lease is similar to that involved in the contracts or leases in the above-cited cases, there is one important distinction: here there is no express admission by the lessor (defendants) obligating them to pay the broker's commission (*cf., Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d at 66 ["Seller shall pay any brokerage commission in accordance with Seller's agreement with the Broker"]; *Ambrose Mar-Elia Co. v Dinstein*, 151 AD2d at 418 ["sellers agree to pay the commission in accordance with separate agreement" (emphasis omitted)]). Thus, since there is no admission by defendants obligating them to pay, and because the obvious purpose of the indemnity provisions in the lease is to benefit the parties to the contract, rather than the broker,

plaintiff is not entitled to summary judgment as a third-party beneficiary of such contract (*see Warsawer v Burghard*, 234 App Div 346, 347-348 [1932]).

Nevertheless, we find that the evidence submitted by plaintiff is sufficient to raise a triable issue of fact as to the existence of an implied contract of employment with defendants. First, although the indemnity provisions in the lease do not support plaintiff's asserted third-party beneficiary status, their precise wording does provide some evidence that defendants assumed responsibility for paying plaintiff's commission (*see Morris Cohon & Co. v Russell*, 23 NY2d 569, 575 [1969]). In article 69 of the lease, the tenant (BI) agreed to hold the landlord (defendants) harmless against any claims for a brokerage commission by any broker "except Joseph P. Day Realty Corp." In contrast, the same article includes a contractual promise by the landlord (defendants) to hold the tenant (BI) harmless for any brokerage commission by any broker "including Joseph P. Day Realty Corp." Thus, since defendants' indemnity obligation was broader than that of BI, and expressly *included* a claim for a brokerage commission by this plaintiff, it may reasonably be inferred that the parties intended that defendants, not BI, were obligated to pay plaintiff's commission.

This Court has also held an owner liable for a broker's commission under a theory of a broker's implied employment where, even in the absence of the owner's express agreement to pay the broker's commission, the owner accepted and benefitted from the broker's services (*see Gronich & Co. v 649 Broadway Equities Co.*, 169 AD2d 600 [1991]). In *Gronich* (169 AD2d at 602), a case factually similar to this matter, the broker brought the property to the lessee's attention, brought the parties together and helped negotiate the essential lease terms, conveyed an offer on behalf of the lessee to the owner, advised the latter of the method of calculating its commission and otherwise acted as a catalyst for the resulting lease (*id.* at 601). In finding the owner jointly liable with the lessee for the commission, this Court noted that "it cannot be assumed that a broker works gratuitously and the lessor and lessee are held to such knowledge when they accept the result of the broker's services" (*id.* at 602, citing *Colvin v Post Mtge. & Land Co.*, 225 NY 510 [1919], *mot to amend remittitur denied* 226 NY 585 [1919]). We further relied on the fact that the parties' lease acknowledged both the broker's exclusive role and his expectation of being compensated for his services (*id.*).

Many of the factors which led to our finding in *Gronich* that the lessor was liable for the brokerage commission are also

present here. Plaintiff's introduction of the parties, its convey-
ance of an offer on behalf of the lessee and its participation in
a meeting to resolve the terms of the lease shortly before its
execution make it clear that it acted as a catalyst in the result-
ing lease. Further, while defendants avoided any express
obligation to plaintiff, they undeniably accepted the benefits of
its services in securing a lessee for their then-vacant property.
That BI ultimately defaulted on the lease does not diminish
the value of its services.

Also like *Gronich,* there is ample evidence in the record that
both defendants and BI acknowledged that plaintiff acted as
the broker on their lease transaction. In article 69 of the par-
ties' lease, BI warranted that it "did not engage or otherwise
obtain the benefit of the services of any broker or finder
instrumental in consummating this Lease except Joseph P.
Day Realty Corp." Although defendants argue that they did
not similarly warrant, their execution of the lease constitutes,
at a minimum, an express acknowledgment that plaintiff
rendered brokerage services on the transaction. In addition,
plaintiff submitted evidence clearly demonstrating defendants'
awareness that it expected to be compensated for its services.
On two occasions plaintiff conveyed to defendants that the
lease offer from BI was "subject to" plaintiff receiving a
commission. Thus, as in *Gronich,* "[w]hen the seller has ac-
cepted the buyer brought to him by a broker, and when the
seller and buyer have agreed upon terms and execute a lease
agreement, the broker's work is done and he has earned a com-
mission" (*id.* at 602).

We further agree with plaintiff that it has adduced sufficient
evidence to create a triable issue of fact as to whether it was
the "procuring cause" of the subject lease (*compare Greene v
Hellman,* 51 NY2d 197 [1980]). Plaintiff submitted evidence
that it introduced the parties, it showed the space to BI
representatives, it was involved in weekly negotiations with
the parties over the lease terms, it conveyed offers on behalf of
BI to defendants, and it participated in a meeting with the
parties at which the lease terms were finalized. These actions,
although disputed by defendants, more than suffice to raise a
triable issue as to whether plaintiff's efforts were a "direct and
proximate link" between the parties' introduction and the
resulting lease (*Greene v Hellman,* 51 NY2d at 206; *see Cap-
puccilli v Krupp Equity Ltd. Partnership,* 269 AD2d 822, 823
[2000]; *Brown, Harris, Stevens v Rosenberg,* 156 AD2d 249,
250 [1989]).

We reject defendants' argument that plaintiff is not entitled to a commission because the terms of the final lease purportedly differ substantially from the lease proposed by plaintiff in its January 15, 1999 and February 8, 1999 letters. In fact, the February 8 letter set forth the basic terms of the proposed lease as 15 years, with a $200,000 annual rent, with 2% annual rent escalation—which are exactly the same basic terms as the final lease. Although defendants argue in conclusory fashion that "there were substantial differences as to the Rent, Term, Escalations, Landlord's Work and the Space, among others," the substantial similarity between the proposal and final lease is sufficient to deny summary judgment on this basis.

Defendants' final argument is that summary judgment is appropriate in this case because the evidence establishes that plaintiff was working solely as BI's broker. We find the evidence equivocal on this point as well. In *Julien J. Studley, Inc. v New York News* (70 NY2d 628, 629 [1987]), the Court of Appeals held that the defendant seller was not liable for plaintiff broker's commission where the brokerage agreement between the broker and buyer included the broker's statement that: "We have acted as your agent in connection with your prospective acquisition of the above premises." Relying on the principle that "[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved" (*Julien J. Studley v New York News*, 70 NY2d at 629, citing *Miller v Schloss*, 218 NY 400, 406-407 [1916]), the Court of Appeals ruled that "the contract reciting that plaintiff has 'acted as [the *buyer's*] agent' in the transaction negates plaintiff's present contention that it was in fact employed as the sellers' agent" (*Julien J. Studley v New York News*, 70 NY2d at 630).

Contrary to defendants' argument, there is no clear evidence in this case that plaintiff was acting solely as the lessee's agent. That plaintiff, in its January 15, 1999 letter to defendants, conveyed the lease offer "on behalf of Beth Israel Medical Center" does not establish plaintiff as BI's agent as a matter of law. Reasonably construed, this language merely shows that the offer was coming from BI. Defendants also submitted a letter from plaintiff to a third party, wherein plaintiff's vice-president stated that plaintiff was "representing a major medical institution in the acquisition of 4,000—7,000 sf of ambulatory medical care space," as further evidence that plaintiff was working as BI's agent. In our view, this letter falls far short of the explicit contractual representation in *Julien J. Studley, Inc. v New York News* (70 NY2d 628 [1987])

that the broker was working as the buyer's agent (*compare Steven Fine Assoc. v Serota*, 273 AD2d 375, 376 [2000]; *Julien J. Studley, Inc. v Levy Fashion Ctr. Assoc.*, 268 AD2d 218 [2000]). Lastly, defendants submit an unsigned brokerage agreement between them and plaintiff purportedly demonstrating that plaintiff was working solely for BI. We find this unexecuted agreement to lack any probative value on the issue of the identity of plaintiff's principal and do not consider it.

In light of the many issues of fact that must await trial, neither defendants nor plaintiff is entitled to summary judgment. We further note that even had plaintiff met its burden of demonstrating entitlement to judgment as a matter of law, the IAS court would have been authorized to deny said motion on the ground that plaintiff's refusal to provide a bill of particulars or appear for a deposition deprived defendants of facts "essential to justify opposition" to plaintiff's motion (*see Colicchio v Port Auth.*, 246 AD2d 464, 465 [1998]).

We have examined the parties' remaining contentions for affirmative relief and have found them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered on or about January 9, 2002, which denied plaintiff's motion for summary judgment and granted defendants' cross motion for summary judgment dismissing the complaint, should be modified, on the law, defendants' cross motion denied, the complaint reinstated, and otherwise affirmed, without costs.

SAXE, J.P., SULLIVAN, ELLERIN and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 9, 2002, modified, on the law, defendants' cross motion for summary judgment denied, the complaint reinstated, and otherwise affirmed, without costs.