■ PARKER REALTY GROUP, INC., Respondent, v A. MICHELLE PETIGNY, Appellant, et al., Defendants. [891 NYS2d 360]—

Pursuant to an exclusive broker's agreement between plaintiff real estate broker and defendant A. Michelle Petigny, plaintiff arranged for the sale of property owned by Petigny at 970 Eastern Parkway in Brooklyn to ADDA Management, LLC. The broker's agreement provided that the commission was due and payable at the closing and transfer of title and that "[i]n the event[ ] title does not pass due to the Owner's willful default, commission shall still be deemed earned by [plaintiff]." After ADDA failed to close, Petigny entered into a contract with defendant 970 Management LLC. Under the plain language of the brokerage agreement, since the fact that title did not pass to ADDA was not due to Petigny's willful default, plaintiff was not entitled to its $5,880 commission on the ADDA transaction (see Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). Contrary to plaintiff's argument, the parties did not orally modify the agreement to provide for the payment of commission in the event of a buyer's default, since at least one of the material provisions of the contemplated modification remained in dispute (see Willmott v Giarraputo, 5 NY2d 250, 253 [1959]). Plaintiff's

June 17, 2005 e-mail to Petigny states, "[A]lthough we have discussed and agreed upon my company receiving a fee for the prior work with [the ADDA] deal, I have yet to hear back from you regarding an agreed payment amount." Nor is plaintiff entitled to recover under the theory of quantum meruit, since the valid and enforceable written broker's agreement "cover[s] the dispute in issue," i.e., plaintiff's entitlement to payment (*see Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 227-228 [1993]). However, it is undisputed that plaintiff, by its president, Kim Parker, appeared in court, at Petigny's request and with the promise of $500 for the appearance, to testify in connection with Petigny's suit against ADDA.

With respect to plaintiff's $60,000 commission on the sale of the property to 970 Management LLC, plaintiff failed to establish that the parties orally modified their exclusive broker's agreement to extend its term. Kim Parker testified that after she talked to Petigny and received an e-mail saying that Petigny's property manager was aware that Parker would continue to serve as the broker for the property, she continued to show the property and therefore remained "employed" by Petigny (*see Julien J. Studley, Inc. v New York News*, 70 NY2d 628 [1987]). However, Parker also testified that Petigny never signed the written agreement memorializing the new terms and that Petigny had negotiated a separate agreement with another broker. Thus, Petigny's representations cannot be construed as unambiguously creating in plaintiff the exclusive right to sell the property (*see Far Realty Assoc. Inc. v RKO Del. Corp.*, 34 AD3d 261 [2006]). Concur—Tom, J.P., Friedman and Richter, JJ.

Nardelli and Buckley, JJ., dissent in part in a memorandum by Nardelli, J., as follows: I disagree with the majority's determination to vacate the award of $5,880 by the trial court in conjunction with the ADDA transaction, and would affirm that portion of the judgment.

It is axiomatic that after a bench trial, "the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence" (*Claridge Gardens v Menotti*, 160 AD2d 544, 544-545 [1990]; *see also 542 E. 14th St. LLC v Lee*, 66 AD3d 18 [2009]). The trial court's award of $5,880 was rationally based, in that it constituted 6% of the amount of $98,000 being held in escrow with regard to the first transaction, in which the buyer, ADDA Management, defaulted. Defendant Petigny was awarded that amount in a separate proceeding. It is undisputed that ADDA was introduced to Petigny by plaintiff, and that the $98,000 which Petigny was awarded emanated from that transaction.

Contrary to the majority's conclusion, it is evident that the brokerage agreement, which provided for the payment of a full commission on the purchase price only in the event that title transferred, did not cover the situation presented here, where title did not transfer, but the seller nevertheless received a significant benefit, i.e., $98,000, because the broker introduced ADDA to the seller. As this Court has stated, "where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit" (*Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 228 [1993]).

Implicit in the judgment awarded to plaintiff is that the court found that plaintiff performed services in good faith, defendant accepted those services, and plaintiff is entitled to compensation for the reasonable value of those services (*see e.g. Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 266-267 [1995]). In other words, if plaintiff did not introduce ADDA to defendant, defendant would not be enriched by the $98,000 ADDA tendered when the contract was executed. Such a finding by the trial court is hardly irrational, and the trial court's determination to deem plaintiff entitled to 6% of that amount should not be disturbed.