■ Casandra Properties, Inc., Respondent, v M.S.B. Development Company, Inc., Appellant, et al., Defendant. [913 NYS2d 336]—

In an action to recover damages for breach of contract, the defendant M.S.B. Development Company, Inc., appeals from a judgment of the Supreme Court, Richmond County (Ajello, J.), entered November 2, 2009, which, upon a decision of the same court dated September 28, 2009, made after a nonjury trial, is in favor of the plaintiff and against it in the principal sum of $112,500, and dismissed its counterclaim to recover damages for breach of contract.

Ordered that the judgment is modified, on the law, by deleting the provision thereof in favor of the plaintiff and against the defendant M.S.B. Develoment Company, Inc., in the principal sum of $112,500; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Richmond County, for a new trial on the issue of damages; and it is further,

Ordered that the findings of fact on the issue of liability are affirmed.

The plaintiff and the defendant M.S.B. Development Company, Inc. (hereinafter the defendant), entered into a brokerage agreement whereby the plaintiff would serve as the defendant's exclusive broker with respect to the sale of houses within a 90-unit residential development. The agreement provided that the plaintiff would be the defendant's "exclusive broker with regard to the sale of any such homes, and [the defendant] shall pay [the plaintiff] a commission of $4,500 per house, said commission to be deemed earned, and due and payable at time of actual closing of title to any such house." By its terms, the agreement could be cancelled by the defendant only if either of the following events occurred: (1) "Casandra Zappala, individually, no longer devotes her time and energy, on behalf of [the plaintiff] to this Project," or (2) the plaintiff "fails to have purchasers enter sales contracts to sell a minimum of 40 semi-attached or 25 detached homes per year commencing from the time of the 'Grand Opening' of the model home."

In a letter dated August 18, 2006, less than six months after the grand opening of the model home, the defendant terminated the plaintiff's services on the asserted grounds that Zappala had failed to devote sufficient time and energy to the project, and that the plaintiff had failed to equally contribute towards the advertising expenses of the project, as provided in the agreement. The defendant subsequently hired a new broker. According to the trial testimony of a representative of the new broker, at the time of the plaintiff's termination, only two contracts had been entered into with prospective purchasers, and no house had gone to closing. By December 2006, after the new broker was hired, an additional 30 houses went into contract.

The plaintiff commenced this action to recover damages for breach of contract, seeking to recover $405,000, i.e., the $4,500 it would have received as a commission for each of the 90 units to be sold in the development. The defendant asserted a counterclaim to recover certain advertising expenses that it claimed the plaintiff owed it pursuant to the agreement.

After a nonjury trial, the Supreme Court concluded that the

defendant breached the agreement when it enlisted the services of the new broker. The Supreme Court found that within one year of the grand opening, "there were twenty-eight (28) contracts which ultimately closed: three (3) obtained by the plaintiff, and the balance presumably by the new broker." As damages, the Supreme Court concluded that the plaintiff was entitled to the principal sum of $112,500, i.e., "the agreed amount of commissions ($4,500.00 per unit) on the sales by the new broker within the first year period (25) for which it has not been paid." The Supreme Court also dismissed the defendant's counterclaim based on the advertising expenses.

Contrary to the defendant's contention, the Supreme Court properly found that "since plaintiff did devote her time and energy on behalf of [the plaintiff] to this project . . . the fact that [the defendant] may have been dissatisfied with the time and efforts made on its behalf is irrelevant" (internal quotation marks omitted). Accordingly, the Supreme Court correctly found that the appellant breached the agreement when it fired the plaintiff after less than six months. Also contrary to the defendant's contention, the Supreme Court properly dismissed the defendant's counterclaim, as the defendant presented no evidence that it expended sums for the type of advertising that was covered in the agreement.

However, the defendant correctly contends that the Supreme Court erred in calculating the damages it owed the plaintiff. Contrary to the plaintiff's contention, the agreement did not unambiguously provide the plaintiff with an exclusive right to sell the 90 units, whereby it would be entitled to a commission for any sales within the period of the agreement, no matter who procured the buyer (*see Parker Realty Group, Inc. v Petigny*, 68 AD3d 571, 572 [2009], *affd* 14 NY3d 864 [2010]; *Far Realty Assoc. Inc. v RKO Del. Corp.*, 34 AD3d 261, 262 [2006]; *Harvard Assoc. v Hayt, Hayt & Landau*, 264 AD2d 814, 815 [1999]). Rather, the contract merely provided for an exclusive agency agreement, and the measure of damages for breach of an exclusive agency agreement "are measured 'not necessarily' by the amount of commissions, but rather by the expenses actually incurred and the profits or commissions lost on a sale the exclusive broker would have made" (*Interactive Props. v Doyle Dane Bernbach*, 125 AD2d 265, 268 [1986], quoting *Slattery v Cothran*, 210 App Div 581, 583-584 [1924]). In order to properly calculate the damages, and place the plaintiff in the same position it would have been in had the agreement not been breached, the Supreme Court must determine the number of units that would have been sold had the agreement not been improperly

terminated, multiply that number by $4,500, and then subtract the necessary expenses the plaintiff would have incurred had it remained the defendant's broker (*see R & I Elecs. v Neuman*, 66 AD2d 836, 838 [1978]). Accordingly, the matter must be remitted to the Supreme Court for a new trial on the issue of damages. Covello, J.P., Dickerson, Belen and Lott, JJ., concur.