Crown Pontiac, Inc., appeals from an order of the circuit court denying its motion to compel arbitration of the claims stated against it in an action filed by Andrew McCarrell. The issue is whether a preliminary document containing McCarrell's signature[1] became a part of the later-executed contract, which was executed on the same form but on which McCarrell did not sign on the signature line below the arbitration clause.
McCarrell went to Crown Pontiac to look for a used sports car to purchase. Charles Locke, a salesman for Crown Pontiac, showed McCarrell a used 1990 model Nissan 300ZX. Locke wrote on a "Retail Buyer's Order" form: a price of $16,990 for the car and an allowance of $4,000 for the car that McCarrell proposed to trade in; information about the car, such as the odometer reading and the serial number; five items that McCarrell requested Crown Pontiac to correct or repair about the car if he decided to buy it; and other notes. The form included two sections conspicuously set off in boxes, entitled "Disclaimer of Warranties" and "Dispute Resolution Agreement." Each of these boxes contained a line underneath the text for the purchaser's signature. Underneath the dispute resolution agreement, on the line for the purchaser's signature, is McCarrell's signature. Locke did not tell McCarrell to sign on that particular signature line; rather, according to Locke's deposition testimony, he told McCarrell that anywhere on the form was fine, so long as McCarrell gave a signature.
McCarrell testified by deposition that Locke filled out this form on the day that he first went to Crown Pontiac and that he continued to look at other vehicles elsewhere. McCarrell bought the car on June 2, 1994. Locke testified by deposition that he filmed out the form on the same day that McCarrell purchased the car. Crown Pontiac says that Locke took the first "retail buyer's order" form to Tom Reid, who was the manager for the defendant, and had Reid execute the form as acceptance of the transaction. At that point, Crown Pontiac alleges, the form went to Mike Williams, who was a finance manager, and Williams prepared another, typewritten retail buyer's order form — a final version of the contract on the same form as the one that Locke had written notes on.
The price of the Nissan 300ZX, the allowance for the trade-in, the balance due, and the monthly payments are all different on the two forms. For example, the price for the Nissan 300ZX on the second form is $17,999 and the trade-in value is $6,000. McCarrell signed the second retail buyer's order form in four different places — under the trade-in section, in the disclaimer-of-warranties box, under the merger clause, and at the bottom of the page. However, McCarrell did not sign in the box entitled "Dispute Resolution Agreement." One of McCarrell's four signatures on this second form appeared below the following merger clause:
 "Purchaser agrees that the Retail Buyer's Order, Retail Sales Contract and Security Agreement relating to this transaction include all of the terms and conditions of this Agreement and that this Agreement cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the Agreement relating to the subject matters covered hereby. Purchaser further understands that verbal promises by salesmen are not valid and any *Page 617 
promises or understandings not herein specified in writing are hereby expressly waived by the Purchaser."
Section 8-1-41(3), Ala. Code 1975, states that agreements to submit disputes to arbitration cannot be specifically enforced. However, where the agreement "evidences a transaction . . . involving [interstate] commerce," the Federal Arbitration Act preempts this state policy and makes the agreement enforceable.9 U.S.C. § 1 et seq. The FAA does not make all arbitrationclauses in whatever writing enforceable; rather, it makesarbitration agreements enforceable. According to the United States Supreme Court in First Options of Chicago v. Kaplan,514 U.S. 938, 943-44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993
(1995), this determination of whether the parties agreed to arbitrate their disputes should be judged by the "ordinary state-law principles that govern the formation of contracts."
In Doctor's Associates, Inc. v. Casarotto, ___ U.S. ___, ___,116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 908-09 (1996), the Supreme Court reiterated and explained what it meant by the rule stated in Kaplan:
 "[T]he text of § 2 declares that state law may be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' . . . Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."
(Quoting Perry v. Thomas, 482 U.S. 483, 493, 107 S.Ct. 2520,2527, 96 L.Ed.2d 426, 437 (1987) (citations and emphasis omitted).) Accordingly, in light of Kaplan and Casarotto, we turn to general Alabama contract law to determine whether the parties created an enforceable agreement to arbitrate.
In its order denying the motion to compel arbitration, the circuit court relied upon the following facts: 1) the second retail buyer's order form does not have McCarrell's signature on the arbitration clause, although he did sign that form in four other places; 2) the second retail buyer's order form contains a standard merger clause, which McCarrell specifically signed; and 3) the first retail buyer's order form, while seeming to contain McCarrell's signature under the arbitration clause, contains "handwritten terms and conditions which were not included in the final typewritten Retail Buyer's Order." Based on those specific facts, the circuit court concluded that the parties did not intend for the first retail buyer's order form to be binding. The circuit court further noted that "it would not seem appropriate for the Court to find a written agreement to arbitrate where it appears merely fortuitous that McCarrell placed his signature in the dispute resolution agreement 'box' rather than elsewhere on the form."
Relying on Neal v. Hardee's Food Systems, Inc., 918 F.2d 34
(5th Cir. 1990), Crown Pontiac argues that the first retail buyer's order form was part of the overall agreement between the parties. In Neal, the parties entered into a franchise agreement concerning six Hardee's restaurants in Corpus Christi, Texas. To consummate the transaction, the parties made two separate agreements: an "Agreement of Sale and Purchase" and a "License Agreement." The license agreement contained a broad arbitration clause, while the purchase agreement did not. The franchisee brought an action stating several claims. Hardee's filed a motion to stay the proceedings pending arbitration, which the district court denied.
The Fifth Circuit Court of Appeals reversed, holding that the arbitration clause in the license agreement was broad enough to cover the disputes of the parties. The franchisee argued that all of the claims concerned acts done pursuant to the purchase agreement, not the license agreement; that the purchase agreement did not contain an arbitration clause; and that, therefore, the arbitration clause did not apply to the claims at issue. The Fifth Circuit rejected that distinction. It reasoned that "[u]nder general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together." 918 F.2d at 37. The Fifth Circuit held that the license agreement was the "heart of the deal" and that the arbitration *Page 618 
clause contained therein covered disputes arising under the separate purchase agreement. 918 F.2d at 38.
Alabama follows this general contract principle. Recently, inPacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp.,614 So.2d 409 (Ala. 1993), this Court stated: "It is well settled that 'two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract.' " 614 So.2d at 414 (quoting Haddox v. First Alabama Bank of Montgomery, N.A.,449 So.2d 1226, 1229 (Ala. 1984)). The Court held that three separate agreements executed at or around the same time constituted the full agreement between the parties. Crown Pontiac argues from this general contract principle that we should hold that the arbitration clause in the first retail buyer's order form was binding on the parties, even though the parties executed a second retail buyer's order form that contained different terms. Of course, Crown Pontiac argues that only the arbitration clause in the first retail buyer's order form, not the remaining terms, became part of the contract.
On the other hand, McCarrell argues that the first retail buyer's order form did not become part of the agreement because, he says, the merger clause in the second form caused the terms in the first form to be superseded by the terms of the second one. We agree. Merger clauses are enforceable under state contract law. The Court stated in Colafrancesco v. CrownPontiac-GMC, Inc., 485 So.2d 1131, 1133 (Ala. 1986), "Merger clauses, like the one in the case sub judice, have been given effect in Alabama for years." While merger clauses do not bar parol evidence of fraud in the inducement of contracts,Environmental Sys., Inc. v. Rexham Corp., 624 So.2d 1379
(Ala. 1993), they are properly used to ensure that preliminary negotiations, whether oral or written are either memorialized in the final contract or are not considered part of it.
McCarrell specifically signed the merger clause in the final contract. Crown Pontiac would utilize the merger clause to bar the other terms of the first retail buyer's order, such as the different prices of the trade-in vehicle and of the Nissan, but it would ignore that same merger clause in reference to the arbitration clause. Crown Pontiac was the drafter of this retail buyer's order form, and it cannot escape from the terms that it drafted simply because it now finds those terms inconvenient. Accordingly, we hold that the merger clause in the second retail buyer's order form bars the enforcement of any previous agreements of the parties and makes the final retail buyer's order form the final contract of the parties.
We note that the merger clause references "the Retail Buyer's Order, Retail Sales Contract and Security Agreement." It is unclear how many documents are intended to be referred to here, but no documents entitled "Retail Sales Contract," "Security Agreement," or "Retail Sales Contract and Security Agreement" are included in the record. There is a document in the record entitled "Motor Vehicle Installment Sale Contract (Precomputed Interest)," which gives the terms of the financing. If the merger clause in the second retail buyer's order form is deemed to incorporate this document as part of the contract, this would illustrate the proper application of the doctrine on which Crown Pontiac seeks to rely. This "installment sale contract" does not include an arbitration clause.
The above holding resolves the question regarding the enforceability of the arbitration clause in the first retail buyer's order form; however, the second retail buyer's order form also contained an arbitration clause, although McCarrell did not sign it. Therefore, the question remains whether the arbitration clause in the second retail buyer's order form was enforceable simply by being included in the form.
The purpose of a signature is to show "mutuality and assent," which are required for a contract to be binding. Lawler MobileHomes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala. 1986). Conversely, in this case the absence of a signature under the arbitration clause shows a lack of mutuality and assent, where the contract contains a signature line specifically for the arbitration clause, but *Page 619 
where McCarrell did not sign on that line, although he signed on other lines that similarly indicated agreement to specific terms. Crown Pontiac argues that it told McCarrell of the arbitration agreement and that McCarrell did not object to it. However, his lack of objection is not the same as an acceptance of the term, and it does not override the fact that McCarrell did not sign the arbitration clause, but signed every other part of the contract. Crown Pontiac further argues that it did not have him sign that arbitration clause because he had already signed one on the first retail buyer's order form; however, Crown Pontiac should have known that any terms contained in the first retail buyer's order were nullified by the merger clause in the second retail buyer's order. For these reasons, the unsigned arbitration clause on the second retail buyer's order form did not become a part of the overall agreement of the parties.
Accordingly, the circuit court properly denied the defendant's motion to compel arbitration.
AFFIRMED.
HOOPER, C.J., and SHORES, HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
MADDOX, J., concurs in the result.
[1] McCarrell denies that the writing on the preliminary document is his signature, but we assume for the purposes of this opinion that it is.