728 So.2d 592 (1998)
Ex parte Cindy L. McNAUGHTON.
(Re Cindy L. McNaughton v. United Healthcare Services, Inc., et al.).
1961708.
Supreme Court of Alabama.
August 28, 1998.
Rehearing Denied March 5, 1999.
*593 W. Lewis Garrison, Jr., and Ashley M. Taylor of Jackson, Garrison & Sumrall, P.C., Birmingham, for petitioner.
Edward S. Allen, Marcel L. Debruge, and Miriam Gibson Harris of Balch & Bingham, L.L.P., Birmingham; and Nathan R. Norris of Engel, Hairston & Johanson, P.C., Birmingham, for respondents.
SEE, Justice.
Cindy L. McNaughton, the plaintiff in an action pending in the Jefferson Circuit Court, petitions for a writ of mandamus directing the circuit court to vacate its order compelling the arbitration of her claims against the defendant United Healthcare Services, Inc. ("United"). McNaughton maintains that arbitration is inappropriate because the arbitration clause contained in her employee handbook and relied on by the trial court is not part of a legally binding contract. In the alternative, McNaughton argues that the arbitration clause is void under the doctrine of unconscionability/mutuality of remedy. Because we hold that the arbitration clause was contained in a binding contract, and because we reject application of the doctrine of unconscionability/mutuality of remedy, we deny the petition.

I.
In July 1996, United hired McNaughton as an account service coordinator to work in United's Montgomery office. In accordance with a standard United employment policy, United issued McNaughton an employee handbook and required her to sign a form acknowledging that she had received it. As a condition of employment, United requires all employees to resolve employment claims against United through binding arbitration. Thus, each employee handbook contains an acknowledgement form that incorporates an arbitration agreement. As a condition of her employment, McNaughton signed one of these acknowledgement forms that incorporates United's arbitration policy.
In February 1997, McNaughton requested a transfer from the Montgomery office to United's Birmingham office. United subsequently interviewed her for a position in Birmingham. McNaughton alleges that after the interview process, United offered her a position in Birmingham, that she left her *594 position with United in Montgomery, and that, relying on that offer, she relocated to Birmingham. However, United then notified McNaughton that it had hired another person for the Birmingham position. By that time, McNaughton's former position in the Montgomery office had also been filled.
In April 1997, McNaughton sued United in a two-count complaint claiming (1) fraud based on an alleged promise by United to transfer her from United's Montgomery office to its Birmingham office, and (2) claiming intentional interference with business relations. The trial court granted United's motion to stay the proceedings and to compel arbitration. McNaughton filed this mandamus petition.

II.
A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989). Although mandamus relief is rarely appropriate, it is available when a party demonstrates that he has been compelled to arbitrate a claim that he did not agree to arbitrate.[1]Ex parte Beasley, 712 So.2d 338, 339-40 (Ala. 1998).
Section 2 of the Federal Arbitration Act ("FAA") provides:
"A written provision in any ... contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...."
9 U.S.C. § 2 (emphasis added).[2] Consistent with the FAA, trial courts are required to stay or dismiss proceedings and compel arbitration when the parties have entered into a valid contract containing an arbitration agreement. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration:
"The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These principles provide the framework within which we must determine whether the trial court erred in requiring McNaughton to arbitrate the claims arising out of her employment.[3]

A. Binding Agreement to Arbitrate
McNaughton first argues that the acknowledgement form she signed when she accepted *595 employment with United did not create a binding agreement to arbitrate her employment claims. The acknowledgment form contains the following pertinent language:
"At-Will Employment
"I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and [United].
"I understand that the employment relationship is `at will' and is based upon the mutual consent....
"Specific Acknowledgements

". . . .
"Internal Dispute Resolution/Employment Arbitration Policy....
"These policies provide the opportunity for prompt and objective review of employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy."
(Emphasis added.)
McNaughton argues that, because of the "at-will" nature of her employment and because of the provision expressly stating that the policies contained in the employee handbook are not binding, this Court should not construe the arbitration policy incorporated into the acknowledgement form to be a binding agreement. We disagree.
When one party proposes a standard contract to another party, the parties may, of course, agree to be bound by certain of the clauses in the proposed contract and not to be bound by others. For example, in Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 618-19 (Ala.1997), this Court held that an arbitration clause in a retail buyer's order was not binding because the buyer did not sign in the space provided under the arbitration clause, while he did sign in the spaces provided under other clauses of the retail buyer's order. Those clauses under which the buyer signed, indicating his agreement, were binding, but the clause under which the buyer did not sign, failing to indicate his agreement, was not binding. See id.
McNaughton's signed acknowledgement form indicates that the parties agreed to be bound by one provision of the employee handbookthe arbitration policybut not by other provisions of the handbook. Under McCarrell, 695 So.2d at 618-19, the provision of the employee handbook to which McNaughton agreed to be bound"I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy"is binding.[4] And the other provisions of the employee handbook to which McNaughton did not agree to be bound"I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract"are not binding. Id. Given the clear precedent of McCarrell, to hold otherwise would treat arbitration clauses differently from other provisions of a contract, in contravention of the express holding of the Supreme Court of the United States. See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions.... By enacting § 2 [of the Federal Arbitration Act] ..., Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'") (citations omitted).
Further, under clear Alabama contract law, United's providing at-will employment to McNaughton constituted sufficient consideration in exchange for McNaughton's agreement to arbitrate her employment disputes under United's arbitration policy. This *596 Court has consistently held that an employer's providing continued at-will employment is sufficient consideration to make an employee's promise to his employer binding. For example, in Condelles v. Alabama Telecasters, Inc., 530 So.2d 201, 204 (Ala.1988), this Court stated that "continued [at-will] employment is sufficient consideration for signing a noncompetition agreement." (Citing Daughtry v. Capital Gas Co., 285 Ala. 89, 93, 229 So.2d 480, 483 (1969).) Similarly, United's provision of new at-will employment to McNaughton was sufficient consideration to make McNaughton's promise to arbitrate employment disputes under United's arbitration policy a binding agreement.
These conclusions are supported by Kelly v. UHC Management Co., 967 F.Supp. 1240 (N.D.Ala.1997), in which the United States District Court for the Northern District of Alabama held that an acknowledgment form signed upon receipt of an employee handbook and that contained language identical to the language of the acknowledgment form signed by McNaughton created a binding contract to arbitrate employment disputes. Just as with the acknowledgment form signed by McNaughton, the acknowledgement form signed in Kelly, 967 F.Supp. at 1243, provided that "the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract." Just as with the acknowledgment form signed by McNaughton, the acknowledgement form signed in Kelly, id., provided: "I agree to submit all employment related disputes based on a legal claim to arbitration...." Just as with McNaughton's promise to arbitrate under United's arbitration policy, the employees' promises in Kelly, id. at 1260, to arbitrate under the employer's arbitration policy was supported by the consideration of at-will employment. The district court in Kelly held that the acknowledgment form signed by the employees created a binding agreement to arbitrate their claims against the employer. Id. at 1260. Accord Beasley, 712 So.2d at 339 (stating that if an employee signs an acknowledgment form containing a binding arbitration clause, the employee will be required to arbitrate his claims) (citing O'Neil v. Hilton Head Hospital, 115 F.3d 272, 273 (4th Cir.1997), and Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir. 1997)). Accordingly, we hold that the acknowledgment form signed by McNaughton created a binding agreement to arbitrate her claims against United.

B. Unconscionability/Mutuality of Remedy
McNaughton contends that even if the language in the acknowledgment form creates a binding agreement to arbitrate, the contract is void under the doctrine of unconscionability/mutuality of remedy. United's arbitration policy allows United to choose arbitration or another forum, but does not afford the employee the same choice of forum:
"The Policy does not require that [United] initiate the arbitration process in regard to any dispute. In addition [United] is not required to follow the steps of either [the Internal Dispute Resolution process] or the [Arbitration] Policy before initiating or implementing any disciplinary action, or before asserting any claim, demand or action against an employee for breach of any restrictive covenant, wrongful disclosure of confidential information, or any other actions which may constitute a breach of contract, a breach of [United's] Code of Conduct, a breach of a common law duty, or a breach or violation of either civil or criminal law.
". . . .
"[United] reserves the right to alter, amend, modify, or revoke this policy at its sole and absolute discretion at any time with or without notice. Any alteration, amendment, modification, or revocation may be done only in writing, signed by the Senior Executive, Human Resources."
In support of her argument that the language quoted above voids her agreement to arbitrate, under the doctrine of unconscionability/mutuality of remedy,[5] McNaughton *597 relies heavily on Northcom, Ltd. v. James, 694 So.2d 1329, 1338 (Ala.1997), where two Justices on this Court stated in dictum:
"[I]n a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability."
Upon further consideration, we reject this dictum from Northcom, merging the distinct doctrines of unconscionability and mutuality of remedy to strike down arbitration clauses. Arbitration is not inherently unconscionable, nor is it a remedy. When interpreting the FAA, the federal courts have concluded that, consistent with the federal policy strongly favoring arbitration, Moses H. Cone Mem'l Hospital, 460 U.S. at 24-25, 103 S.Ct. 927, "there is nothing inherently unfair or oppressive about arbitration clauses." Coleman v. Prudential Bache Securities, Inc., 802 F.2d 1350, 1352 (11th Cir.1986). Accord Kelly, 967 F.Supp. at 1257 ("`[T]here is nothing inherently unfair or oppressive about arbitration clauses.' ... [N]othing about the present agreement is unconscionable or overbearing.") (citation omitted). Moreover, the Supreme Court has stated: "Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Instead of suffering unconscionable treatment, a party, "by agreeing to arbitrate, ... `trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" Gilmer, 500 *598 U.S. at 31, 111 S.Ct. 1647 (citations omitted). Thus, agreements to arbitrate are not in themselves unconscionable.[6]
Further, properly understood, the concept of mutuality of remedy has no application to arbitration agreements. In General Securities Corp. v. Welton, 223 Ala. 299, 306, 135 So. 329, 335 (1931), this Court explained the concept of mutuality of remedy:
"`"Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiffs side of the contract." ... "The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiffs part." This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.'"
(Citations omitted.) "However, the law does not require that the parties have similar remedies in case of breach, and the fact that specific performance or an injunction is not available to one party is not a sufficient reason for refusing it to the other party." Restatement (Second) of Contracts, § 363 cmt. c (1981).
The doctrine of mutuality of remedy is limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result. See Goodwin v. Ford Motor Credit Co., 970 F.Supp. 1007, 1014 (M.D.Ala. 1997) ("[A]rbitration is not a remedy, but a choice-of-forum in which to seek remedies (just as a jury trial is no more or less a remedy than a bench trial)...."). Thus, an arbitration proceeding is not a remedy.
Accordingly, in Goodwin, 970 F.Supp. at 1012, the United States District Court for the Middle District of Alabama stated:
"[Northcom] ... introduces a rather novel, if not revolutionary, doctrine of contract law. In its strong version, it holds that each party to an arbitration agreement must be able to compel the other to arbitrate disputes whenever it would be most advantageous to themselves to do so, or the agreement will not be enforced. At the very least, it holds that both sides may have to have symmetrical remedies in an adhesion contract, or it may be found unconscionable. The weight of precedent and scholarship ... generate too much ballast for this doctrine to be able to lift off...."
Accord Rollins, Inc. v. Foster, 991 F.Supp. 1426 (M.D.Ala.1998) (reiterating that it would not accept the doctrine of unconscionability/mutuality of remedy referred to in Northcom).
Although the doctrine of unconscionability/mutuality of remedy purportedly could apply in the nonarbitration context, as suggested in the main opinion in Northcom, it directly depends on arbitration for its application: "The element of unconscionability in the context of an arbitration clause is supplied by the fact that, by agreeing to arbitrate, a party waives his right to `a remedy by due process of law' ... and his `right of trial by jury'...." Northcom, 694 So.2d at 1338-39 (citations omitted). See Goodwin, 970 F.Supp. at 1014 ("[W]hile paying lipservice to the notion that [the doctrine of unconscionability/mutuality of remedy] `is equally true as to any unconscionable term of a contract of adhesion,' ... the [lead opinion in Northcom] relies on the uniqueness of the concept of arbitration under Alabama law to support the [doctrine]."). At bottom, this approach assigns a suspect status to arbitration agreements. Doing so flies in the face of Doctor's Associates, 517 U.S. at 687, 116 S.Ct. 1652, where the Supreme Court of the United States explicitly stated that "[c]ourts may not ... invalidate arbitration *599 agreements under state laws applicable only to arbitration provisions." (Emphasis omitted.) Accordingly, we expressly reject the Northcom dictum regarding the doctrine of unconscionability/mutuality of remedy.[7]
McNaughton entered into a legally binding agreement with United to arbitrate her claims. Because we reject the Northcom dictum, the arbitration agreement is not void on the basis of the doctrine of unconscionability/mutuality of remedy. Thus, McNaughton has not demonstrated that the trial court erred in ordering the arbitration of her claims.
WRIT DENIED.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
LYONS, J., concurs specially.
ALMON, SHORES, KENNEDY, and COOK, JJ., dissent.
LYONS, Justice (concurring specially).
I write specially to state that I join in the main opinion without reservation. Upon reading Justice Almon's moving dissent, I am compelled to observe that I can detect no sense of glee or smug satisfaction on the part of any member of the majority in the difficult task of applying the Federal Arbitration Act to cases pending in the courts of this state. I hasten to add that I do not read in the dissent any insinuation that the majority relishes the task of implementing the Federal Arbitration Act, but I wish to eliminate any doubt.
In his dissent, Justice Almon invokes the Ninth and Tenth Amendments to the United States Constitution as he passionately protests what he sees as injury to fundamental rights resulting from the application of the Federal Arbitration Act. I am reminded of the spirit in which I wrote a concurring opinion in Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998), where I expressed an apparently divergent view as to the availability of the Tenth Amendment in the context of federal power derived from the Commerce Clause (Art. I, § 8), further discussed what I see as mixed signals in this area from the Alabama Constitution of 1901, and offered what I consider to be a defensible role for the doctrine of unconscionability. I do not believe this case presents such facts as would be essential for a finding of unconscionability.
ALMON, Justice (dissenting).
I respectfully dissent. I continue in the views I expressed in Northcom, Ltd. v. James, 694 So.2d 1329, 1338 (Ala.1997):
"[I]n a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability."
The employee handbook at issue here gives no rights to the employee and imposes no obligations on the employer, but it conditions continued employment on a requirement that the employee waive his or her constitutional rights to trial by jury, U.S. Const. Amend. VII;[8] Ala. Const.1901, Art. I, § 11,[9] and to *600 access to a judicial tribunal for a remedy by due process of law, U.S. Const. Amends. V and XIV;[10] Ala. Const.1901, Art. I, §§ 10 and 13.[11]
A contract of adhesion is one that is offered on a "take it or leave it" basis to a consumer who has no meaningful choice in the acquisition of goods or services. Northcom, at 1337. I would hold this definition applicable to employees as well as consumers, at least as to certain terms of employment, such as one that attempts to force an employee to surrender constitutional rights. I think this attempt by United Healthcare Services, Inc., to impose arbitration on its employees fits the definition of a contract of adhesionassuming, as I do not, that any contract is created by the handbook at all.
I also think it would be unconscionable to enforce the arbitration clause in this employee handbook. United gives its employee no right or benefit for his or her "agreement" to submit any claims or disputes to arbitration. United reserves to itself the absolute right to amend or repeal any provision of its handbook, including the arbitration clause. Thus, it can litigate any claims it has against its employee, so that, as Justice Cook says, any purported promise it has made to arbitrate its claims is simply illusory.
The discussion in Northcom regarding mutuality of remedy presents a perspective from which it can be seen that, because of equitable principles applicable to all contracts, a court should not grant a motion that, in essence, seeks specific performance of an arbitration clause in a contract, where the movant would not be subject to such a remedy. If a superior party, such as an employer, can invoke specific performance of an arbitration clause in a contract of adhesion, but the inferior party, such as an employee, cannot, there is such a lack of mutuality that a court should not grant the equitable remedy of specific performance of that term of the contract. In short, it would be inequitable and, under the circumstances, unconscionable, to deprive someone of their constitutional rights to access to a court and to a jury for resolution of their claims against the party that has sought to deprive them of those rights.
Before its recent discovery of a federal policy favoring arbitration,[12] the Supreme Court aptly expressed concern:
"[T]he remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State. The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result. Arbitration carries no right to trial by jury that is guaranteed both by the Seventh Amendment and by Ch. 1, Art. 12th, of the Vermont Constitution. Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award *601 is more limited than judicial review of a trialall as discussed in Wilko v. Swan, 346 U.S. 427, 435-438, 74 S.Ct. 182, 98 L.Ed. 168 [(1953)]."
Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956).
The Federal Arbitration Act was originally adopted by Congress to allow merchants, wholesalers, shippers, and other sophisticated parties engaged in commercial and business activities to agree among themselves, in bargained-for contracts, to submit to binding arbitration any disputes that might arise out of their activities in interstate or maritime commerce. See Jean R. Sternlight, Panacea or Corporate Tool?: Debunking the Supreme Court's Preference for Binding Arbitration, 74 Wash. U.L.Q. 637, 647 (1996), and Jean R. Sternlight, Rethinking the Constitutionality of the Supreme Court's Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns, 72 Tulane L.Rev. 1 (1997). The Supreme Court of the United States has expanded the application of that Act to contracts between retailers and consumers, see, e.g., Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In Gilmer v. Interstate/Johnson Lane Co., 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), it also acknowledged, without reaching the question, that the federal appellate courts have held that the FAA applies to employment contracts, in spite of the express language of 9 U.S.C. § 1 that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." See Tenney Engineering, Inc. v. United Elect. Radio & Mach. Workers of America, 207 F.2d 450 (3d Cir.1953), and cases following. It seems contradictory to say that a contract of employment "involv[es] commerce," 9 U.S.C. § 2, for the sake of applying the FAA, and then to say that the worker is not "engaged in ... interstate commerce," 9 U.S.C. § 1, for the sake of refusing to apply the exception to the FAA.
The United States Supreme Court has, however, recognized that under the FAA, 9 U.S.C. § 2, an arbitration provision is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The refusal to enforce a purported contract that is one of adhesion and that preserves to the superior party who drafted the contract the right of access to a court and the right to a jury while depriving the inferior party of those rights is certainly a ground that exists in equity for revoking such a contract.
It seems that the majority's decision will allow employers to present their employees with a document that says, in effect, "If you want to continue working for me, you have to give up your right to take me to court and to have a jury trial to obtain redress for an injury I may cause you to suffer." Does this apply to workers' compensation claims? If one employer is allowed to do this, is there anything to stop all employers from doing it and thereby depriving citizens of any opportunity to work without forfeiting their constitutional rights?
I cannot see how the United States Supreme Court, which exists pursuant to the United States Constitution, can apply an Act of Congress so as to undermine the right of trial by jury in the states that guarantee that right in their state constitutions. The United States Constitution guarantees the right of trial by jury in the Seventh Amendment. That Amendment was adopted within the Bill of Rights as a limitation on the Federal Government. Furthermore, the Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." If there is any conflict between the Commerce Clause, Art. I, § 8, cl. 3, U.S. Const., and the Bill of Rights, the latter clearly should prevail, because its adoption as a limitation on federal power was crucial to the ratification of the Constitution.
How can the Supreme Court, ignoring the Seventh and Tenth Amendments and state constitutional guarantees of the right of trial by jury, construe an Act of Congress beyond *602 its original intent in such a way as to prevent citizens of the United States and the states from exercising their constitutional right to litigate in court? Neither the Supreme Court nor the Congress has that constitutional authority.
Significant questions in these respects have never been addressed regarding an application of the FAA that deprives individuals of the right of trial by jury based upon a fanciful notion that the individual has "voluntarily" waived that right. I acknowledge the proper application of the Supremacy Clause, U.S. Const. Art. VI, cl. 2,[13] but I am reluctant to concede that the United States Supreme Court has the authority to adopt a construction of an Act of Congress that does the following things: (1) Under the auspices of the Commerce Clause, the Act is construed to undermine the rights of the citizens of the several states to a trial by jury as guaranteed under their state constitutions and under the founding principles of this country.[14] (2) A notion of waiver of constitutional rights is adopted that runs directly counter to the jurisprudence regarding waiver of constitutional rights in all other areas, especially criminal law. (3) The "republican form of government" that Article IV, § 4, of the United States Constitution commands the United States to "guarantee to every state" is seriously undermined by a wholesale removal from the state courts of jurisdiction to resolve disputes. (4) Liberty is curtailed, despite the fact that, as expressed in the Preamble to the United States Constitution "We, the People of the United States, in order to ... secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America."
The United States Supreme Court has not addressed the application of the Seventh Amendment to the FAA. Even if the Seventh Amendment does not protect a litigant's right of trial by jury in a state court, surely that right is protected by the Tenth Amendment, quoted above, and the Ninth Amendment, which reads: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." King George's denial of the right of trial by jury was one of the articles of the Declaration of Independence:
"[The King of Great Britain] has combined with others to subject us to a Jurisdiction foreign to our Constitution, and unacknowledged by our Laws; giving his Assent to their Acts of pretended Legislation:
". . . .
"For depriving us, in many Cases, of the Benefits of Trial by Jury."
If a state guarantees its citizens the right of trial by jury in civil cases, the power of Congress to regulate commerce should not be taken to supersede all the constitutional protections of the rights of access to court, to due process of law, and to trial by jury. These points seem so fundamental and so obvious to me that I am amazed that they have not heretofore been raised and addressed in the recent flurry of litigation over the Federal Arbitration Act.
I note these thoughts in passing, with the hope that they may be fully addressed before the jurisprudence under the Federal Arbitration Act finally deprives us of the ordered liberty guaranteed by our constitutional system of government. This decision by the majority concerns me. I hope that the citizens of Alabama and the United States are not harmed as badly as it seems to me they *603 will be. Someone should patch our Liberty Bell and ring it again for all to hear!
SHORES, J., concurs.
COOK, Justice (dissenting).
The majority concludes that Cindy McNaughton, an at-will employee of United Healthcare Services, Inc. ("United"), must arbitrate her claims of fraud and interference with business relations against United, based on arbitration provisions contained in the "Arbitration Policy" section of United's "United Healthcare Corporation Employee Handbook" (the "Handbook"), and more fully set forth in the "United Healthcare Corporation Employment Arbitration Policy" ("the UHCEAP"). In other words, it holds that the arbitration provisions constitute a binding contract between United and McNaughton. Because I consider the arbitration provisions unenforceable under ordinary rules of contract law, I respectfully dissent.
Perhaps it bears repeating here "that the enforceability of arbitration agreements is governed by the rules applicable to contracts generally." Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 136, 535 N.E.2d 643, 645, 538 N.Y.S.2d 513, 515 (1989); see also Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements"). Thus, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., is designed to place arbitration agreements "`upon the same footing as other contracts,'" Casarotto, 517 U.S. at 687, 116 S.Ct. 1652 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (emphasis added), not to elevate them above other contracts. That, in essence, is what the majority has done in this case.
"The at-will employment relationship, despite its limitations, is nonetheless contractual. Employment contracts, particularly those which would be considered at-will, are the best and most typical examples of unilateral contracts." Wagner v. City of Globe, 150 Ariz. 82, 85, 722 P.2d 250, 253 (1986) (emphasis added). In a unilateral contract, "the offer or promise of one party does not become binding or enforceable until there is performance by the other party." Scholtes v. Signal Delivery Serv., Inc., 548 F.Supp. 487, 491 (W.D.Ark.1982). "Ordinarily, in a unilateral contract, there is no bargaining process or exchange of promises.... Only one party makes an offer (or promise) which invites performance by another, and the performance constitutes both the acceptance of that offer and consideration." Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 719 n. 11 (Ind.1997) (emphasis added). In such cases, the employer induces the employee to render services to receive payment for performance, which is, itself, consideration for the promise. The employer's promise ripens into an enforceable contract upon performance by the employee.
In certain cases, as we recognized in Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), terms in an employee handbook can modify the employer's promise in some sense, such as qualifying the employer's unfettered right to terminate employment. But elements added by a handbook do not change the fundamental, unilateral character of the at-will contractual relationship. See Note, Employee Handbooks and Employment-At-Will Contracts, 1985 Duke L.J. 196, 212-14. Still, the parties bargain not for promises, but for performance. See id.
But there is another class of contracts, where the parties contemplate or bargain not for performance, but for promises. Such a contract is bilateral and executorythe promises constituting the necessary consideration. "`In a bilateral contract, the promise of each promisor must be bargained for and given in exchange for the other's promise.'" NBZ, Inc. v. Pilarski, 185 Wis.2d 827, 838 n. 5, 520 N.W.2d 93, 97 n. 5 (Ct.App. 1994).
In this class of contracts, if the promise on one side is only illusory, there is no "mutuality of obligation" and the contract is unenforceable. "Because the promises of both parties to a bilateral contract must be supported by consideration, the contract is unenforceable if the promise of either party is illusory (Calamari & Perillo, Contracts § 70, *604 at 134)." Curtis Properties Corp. v. Greif Companies, 212 A.D.2d 259, 265, 628 N.Y.S.2d 628, 632 (1995). "When illusory promises are all that support a purported bilateral contract, there is no contract." Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 645 (Tex.1994). A promise is illusory when the promisor "promises to do a thing only if it pleases him to do it." Winslow v. Mell, 48 Wash.2d 581, 584, 295 P.2d 319, 321 (1956). Otherwise stated:
"[W]hile a promise may constitute sufficient consideration for a return promise even though the promisor retains a limited discretion as to his performance, it is not sufficient if his performance depends solely upon his option or discretion, as where the promisor is free to perform or to withdraw from the agreement at will."
First Wisconsin Nat'l Bank of Milwaukee v. Oby, 52 Wis.2d 1, 7, 188 N.W.2d 454, 457 (1971) (emphasis added).
The majority misunderstands the facts in this case and misapplies the law. More specifically, it fails to realize that this case involves two, distinct contracts. One contract is the standard unilateral, at-will employment contract. That fact is evidenced by a provision in the "Code of Conduct and Employee Handbook Acknowledgment" ("Code") signed by McNaughton. The Code states:
"At-Will Employment
"I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and UHC."
(Emphasis added.) Indeed, it is undisputed that the employment relationship was an at-will relationship.
But "at-will employment does not preclude the formation of other contracts between employer and employee." Light, 883 S.W.2d at 644 (emphasis in original). If the consideration for such contracts is not the performance of services, but, instead, mutual promises, then the contracts are bilateral andprovided the promises are not illusoryare enforceable independently of unilateral, at-will contracts existing between the parties. The majority fails to recognize (1) that the UHCEAP is an executory, bilateral contract and (2) that the promises of United are illusory. More specifically, it errs in characterizing the UHCEAP as a unilateral relationship thus confusing it with the at-will contract that existed independently of the UHCEAP.
In fact, in addition to the promises of McNaughton, the UHCEAPwhich encompasses 7½ pages of textcontains a number of promises by United. For example, United promises: (1) to "pay 100 percent in excess of the first twenty-five dollars ... of the required AAA administrative fee," UH-CEAP, Rule C., § 1, ¶ 1; (2) to pay the expenses of its own witnesses, id. at § 25; (3) to pay its "own legal fees and expenses," id.; and (4) to pay "[a]ll other expenses ... of the arbitration, such as required travel and other expenses of the arbitrator." Id. Clearly, the UHCEAP contains promises running from both parties.
Moreover, the UHCEAP purports to be applicable to United's employment relationships whether its employees ever actually perform services for United. Specifically, it states in pertinent part:
"B. SCOPE OF POLICY
"Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim....
"A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation or common law doctrine regarding or relating to ... terms and conditions of employment...."
(Emphasis added.)
The scope of the arbitration provisions is so broad that it is entirely conceivable a dispute could arise, triggering the UHCEAP, before an employee actually begins work. In the absence of such performance, the consideration necessary to render a unilateral, at-will contract enforceable would be lacking. The UHCEAP, however, being a bilateral contract, does not stand or fall on performance, but on the mutual promises of the parties. Thus, except for the fact that the promises of United are illusory, the UH-CEAP *605 purports to have been enforceable had McNaughton not worked a single day.
The fatal flaw of the UHCEAP, rendering it illusory, is contained in the following provision: "United Healthcare reserves the right to alter, amend, modify, or revoke this policy at its sole and absolute discretion at any time with or without notice." (Emphasis added.) As I have already discussed in this opinion, a promise is illusory, rendering the "contract" unenforceable, "if [the promisor's] performance depends solely upon his option or discretion, as where the promisor is free to perform or to withdraw from the agreement at will." First Wisconsin Nat'l Bank of Milwaukee v. Oby, 52 Wis.2d 1, 7, 188 N.W.2d 454, 457 (1971) (emphasis added). The "promises" of United in the UHCEAP provide the classic example of this rule, because it can perform, or not perform, at its "sole and absolute discretion."
The majority attempts to evade the application of this rule through its discussion of covenants not to compete, as though the two rules were analogous. They are not. The rule of noncompetition agreements, as it has evolved in this state, bases its validity on performance. See Condelles v. Alabama Telecasters, Inc., 530 So.2d 201, 204 (Ala. 1988) ("our case law holds that continued employment is sufficient consideration for signing a noncompetition agreement"). Under this rationale, the noncompetition agreement is still regarded as a class of unilateral contract. See Note, Consideration for Employee Noncompetition Covenants in Employments at Will, 54 Fordham L.Rev. 1123, 1138-39 (1986). Although such agreements do, like bilateral contracts, involve two promisesthat of the employer to pay for performance and that of the employee not to competeactually, the basis of the bargain is not a promise for a promise as in a bilateral contract. Instead, the employee bargains not for a promise, but for employment, that is, payment for services rendered. "The covenant becomes enforceable against the employee only after the employer has accepted the employee's offer by beginning or completing the requested performance." Id. at 1139. "The requested performance may include continuing the employment, paying the employee a flat stated sum or giving the employee some other immediate benefit." Id.
Thus, noncompetition agreements are distinguished from the bilateral contract in this case by the fact that the at-will contract itself is the essence of the former, but not of the latter. In this case, the consideration on which enforceability depends is the mutual promises, which, on United's side, are illusory. Based on ordinary principles of contract law, therefore, the arbitration agreement in this case is unenforceable.
The majority cites Kelly v. UHC Management Co., 967 F.Supp. 1240 (N.D.Ala.1997), as support for its position on this point. To be sure, that case is factually indistinguishable from this case. Unfortunately, the court in Kelly made the same error the majority makes in this case, namely, the failure to discern that this scenario involves an executory, bilateral contract requiring mutual promises of substance as consideration. For these reasons, I respectfully dissent.
SHORES, J., concurs.
NOTES
[1] A direct appeal is the generally accepted method for obtaining review of a trial court's order denying a motion to compel arbitration. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). A petition for a writ of mandamus is the generally accepted method for obtaining review of an order granting a motion to compel arbitration. Ex parte Alexander, 558 So.2d 364, 365 (Ala.1990).
[2] McNaughton does not contest that her employment involved interstate commerce. See Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (recognizing that the FAA is applicable to only those transactions involving interstate commerce).
[3] Although the matter is not raised by McNaughton, it is clear that the FAA's exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" does not apply to McNaughton's contract to arbitrate her employment claims. 9 U.S.C. § 1. The strong federal policy in favor of arbitration requires a narrow reading of the § 1 exemption. Thus, this Court has limited the § 1 exemption to seamen, railroad workers, and other workers actually involved in the interstate transportation of goods. Robert Frank McAlpine Architecture, Inc. v. Heilpern, 712 So.2d 738 (Ala.1998). Accord O'Neil v. Hilton Head Hosp., 115 F.3d 272 (4th Cir.1997); Rojas v. TK Communications, Inc., 87 F.3d 745, 748 (5th Cir.1996); Asplundh Tree Expert Co. v. Bates, 71 F.3d 592, 600-01 (6th Cir. 1995); Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1162 (7th Cir.1984); Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1069 (2d Cir.1972); Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir.1971).
[4] Ordinarily, in order to constitute a contract, an employee handbook must evidence a clear intention to bind the employer and the employee. Cf. Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987). In this case, the strikingly clear language of the acknowledgement form signed by McNaughton"I agree to submit all employment related disputes based on a legal claim to arbitration under [United's] policy"evidences such an intent.
[5] In his dissent, Justice Cook asserts that the single contract between United and McNaughton is really two contracts: (1) a nonarbitration contract to which all the consideration is allocable; and (2) an arbitration agreement to which none of the consideration is allocable. 728 So.2d at 604 (Cook, J., dissenting). He then concludes that the arbitration agreement is not binding, because it is supported only by promises that United can "alter, amend, modify, or revoke" and, thus, is not supported by sufficient consideration. Id. at 605. This assertion fails, for three reasons. First, there is only one contract. United and McNaughton expressly agreed that the provisions of the employee handbook, "except for the provisions of the Employment Arbitration Policy, do not establish a contract." See Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982) ("Where... the language of the contract is unambiguous and plain in its expression, the court cannot alter the agreement by construction but rather must expound it as made by the parties."). Thus, the only contract that the parties themselves, by their own writing, agreed to is the arbitration policy contained in the employee handbook.

Second, the single contractthe arbitration agreementis supported by sufficient consideration. McNaughton agreed to arbitrate pursuant to the arbitration policy, which United reserved the right to amend. In return, United provided at-will employment to McNaughton. United's provision of at-will employment was sufficient consideration to support McNaughton's promise to arbitrate her employment-related disputes. In Condelles v. Alabama Telecasters, Inc., 530 So.2d 201, 204 (Ala.1988), this Court rejected the argument that an employer's providing at-will employment is not sufficient consideration to support an employment-related promise by the employee:
"[The employee] also argues that he was paid no consideration for signing the noncompetition agreement. We note that our case law holds that continued employment is sufficient consideration for signing a noncompetition agreement."
Similarly, we reject the argument that United's providing at-will employment is not sufficient consideration to support the employment-related promise to arbitrate by McNaughton.
Third, United's promises in the arbitration policy, which it reserved the right to "alter, amend, modify, or revoke," do not deprive the contract of consideration. Of course, these revocable promises by themselves would not constitute sufficient consideration to support a contract to arbitrate. See 3 Richard A. Lord, Williston on Contracts § 7:7, p. 89 (4th ed. 1992) ("[W]here the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration."). However, providing at-will employment is sufficient consideration. Condelles, 530 So.2d at 204. At bottom, United gave McNaughton a job, and McNaughton in return agreed, as a condition of her employment, to arbitrate employment-related disputes pursuant to the arbitration policy as amended by United from time to time. Thus, there was sufficient consideration to bind McNaughton to arbitrate her employment-related claims. See Kelly v. UHC Management Co., 967 F.Supp. 1240, 1258-60 (N.D.Ala.1997) (holding that an employer's reservation of right to "alter, amend or revoke the arbitration policy" in an employee handbook did not invalidate the binding agreement to arbitrate employment disputes); Maye v. Smith Barney Inc., 897 F.Supp. 100, 103 (S.D.N.Y.1995) (holding that an employee was required to arbitrate employment disputes under arbitration policies that the employer reserved the right "to publish from time to time").
[6] McNaughton does not allege that the arbitration agreement is for any other reason unconscionable.
[7] We note that McNaughton also cites Hull v. Norcom, Inc., 750 F.2d 1547 (11th Cir.1985), for the proposition that the arbitration agreement is not binding under the doctrine of "mutuality of obligation." On rehearing in Northcom, Ltd. v. James, 694 So.2d 1329, 1336 (Ala.1997), this Court rejected the use of that doctrine to strike down an arbitration clause. Accord Randolph v. Green Tree Financial Corp., 991 F.Supp. 1410, 1421-22 (M.D.Ala.1997) (rejecting the "mutuality of obligation" argument, and noting that Hull was based on New York case law that was subsequently overruled).
[8] The Seventh Amendment to the Constitution of the United States provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."
[9] Section 11 of the Alabama Constitution of 1901, together with the preamble to Article I, the Declaration of Rights, provides: "That the great, general, and essential principles of liberty and free government may be recognized and established, we declare: ... That the right of trial by jury shall remain inviolate." The right of trial by jury has been guaranteed in these words in all of the Constitutions of Alabamain 1819, as Art. I, § 28; in 1861, as Art. I, § 28; in 1865, as Art. I, § 12; in 1868, as Art. I, § 13; in 1875, as Art. I, § 12.
[10] The Fifth Amendment to the Constitution of the United States, provides, in pertinent part: "No person shall be ... deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment provides, in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
[11] Section 10 of the Alabama Constitution of 1901 provides: "That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party." Section 13 provides: "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
[12] That policy was first announced in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See Sternlight, Rethinking the Constitutionality, infra, 72 Tulane L.Rev. at 17-18.
[13] The Supremacy Clause reads: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." (Emphasis added.) Of course, if the Federal Arbitration Act conflicts with the Constitution of the United States, it is not "the supreme law of the land."
[14] The Supreme Court has not, at any time since it began applying the doctrine of selective incorporation of the Bill of Rights into the Fourteenth Amendment, squarely addressed the question whether the Seventh Amendment applies to the states. Even absent the application of the Seventh Amendment directly to the states, its presence in the Bill of Rights is certainly a limitation on the power of the Congress and the Supreme Court of the United States.